**CHICAGO, B. & Q. R. CO. v. ILLINOIS COMMERCE COMMISSION et al.**

**No. 48C849.**

United States District Court
N. D. Illinois, E. D.
Jan. 6, 1949.

Andrew C. Scott, of Chicago. Ill. (J. C. James and Eldon Martin, both of Chicago, Ill., on the brief), for plaintiff.

George F. Barrett, Atty. Gen., William C. Wines, Raymond S. Sarnow and James C. Murray, Asst. Attys. Gen., for defendants.

Before SPARKS, Circuit Judge, and HOLLY and LA BUY, District Judges.

PER CURIAM.

(1) Plaintiff is now, and for many years last past has been, an Illinois railroad cor-

poration engaged in transporting freight and passengers as a common carrier by railroad between points within the State of Illinois as well as between Illinois points and points in other states, with its principal place of business at 547 West Jackson Boulevard, Chicago, Illinois.

(2) Defendant Illinois Commerce Commission is an administrative body created by the Illinois Legislature to administer the Illinois Public Utilities Act, Ill.Rev. Stat.1947, c. 111⅔, § 1 et seq., and said Commission has offices in both Springfield and Chicago, Illinois.

(3) Defendants, John D. Biggs, William Parillo, Edwin A. Rosenstone, Frank Peska, and Val J. Washington are now, and for many years last past have been, the duly appointed, qualified and acting members of the Illinois Commerce Commission, and said defendants are citizens and residents of the State of Illinois.

(4) Defendant George F. Barrett is an Illinois citizen and a resident of the Eastern Division of the Northern Illinois District and is the duly elected, qualified and acting Illinois Attorney General. Defendant Barrett appeared herein on behalf of himself, as well as on behalf of each of the foregoing defendants, and filed a motion to dismiss the complaint, an answer to said complaint, and participated in the trial on November 5, 1948.

(5) Plaintiff herein seeks a temporary restraining order, temporary injunction and permanent injunction enjoining the defendants and each of them from enforcing the remedies by a penalty and otherwise, provided in the Illinois Public Utilities Act for plaintiff's failure to reinstate its trains 51 and 52 pursuant to the requirements of Section 49a of the Illinois Public Utilities Act and said Commission's order in its Docket 36251, on the ground that said statute and order violate plaintiff's rights under the Federal Constitution; also on the ground that said Commission's refusal to postpone the effective date of its order in Docket 36251 pending judicial review thereof violated plaintiff's right under the Federal Constitution; also on the ground that said Commission had for more than 7 years last past, and

up to the date of the trial herein on November 5, 1948, pursued an illegal custom and practice of conducting sham hearings in train discontinuance cases whereby said hearings were deliberately and unnecessarily continued and protracted for many months, thereby dissipating plaintiff's public utility assets in violation of plaintiff's rights under the Federal Constitution.

(6) Subsequent to the taking of evidence on plaintiff's motion for temporary injunction at the hearing on November 5, 1948, the parties filed a stipulation on December 23, 1948, wherein it was agreed that the pleadings, testimony, exhibits and briefs theretofore submitted on the motion for temporary injunction might be treated by the court as the pleadings, testimony, exhibits and briefs for the purpose of deciding plaintiff's motion for a permanent injunction.

(7) The amount of the controversy involved herein exceeds the sum or value of $3,000 exclusive of interest and costs.

(8) Plaintiff operates approximately 8,-867 miles of intrastate and interstate railroad extending from Chicago, Illinois, to St. Paul, Minnesota; from Chicago, Illinois, to Billings, Montana, via Omaha, Nebraska, and Denver, Colorado; from Chicago, Illinois, to Kansas City, Missouri; and from Chicago, Illinois, to St. Louis, Missouri, including a 323-mile line of interstate railroad extending from St. Louis, Missouri, to Savanna, Illinois, a 35-mile segment of which lies within the State of Iowa between the cities of Davenport and Clinton.

(9) For many years prior to March 21, 1948, plaintiff operated, daily, its passenger trains 47 and 51 northbound from St. Louis, Missouri, to Savanna, Illinois, and its trains 48 and 52 southbound from Savanna, Illinois, to St. Louis, Missouri, over said 323-mile segment of railroad. Nos. 47 and 48 were and are day trains, and Nos. 51 and 52 were night trains.

(10) The time usually required for each train to make the 323-mile trip from St. Louis, Missouri, to Savanna, Illinois, was approximately 14 hours. Plaintiff was and is required continuously to employ a locomotive engineer, fireman, conductor, brake-

man, and baggageman on each of said trains at all times. A total of 12 employes was and is required to make each daily train trip. The locomotive engineer and fireman receive a day's pay for 8 hours' work or 100 miles whichever comes first. The conductor, brakeman and baggageman receive a day's pay for 8 hours' work or 150 miles whichever comes first. If the daily trip made by each train could be reduced to one hour's running time, plaintiff would still be required to pay said employes the same amounts presently paid for the 14-hour run, viz., 3.3 days' pay each to the engineer and fireman, and 2.25 days' pay each to the conductor and brakeman and baggageman.

(11) During January, 1948, the operation of trains 47, 48, 51 and 52 between St. Louis, Missouri, and Savanna, Illinois, involved a total out-of-pocket loss to plaintiff at the rate of approximately $286,000 annually; and said trains' operations involved a total loss during the year ending January 31, 1948, including both direct and indirect expenses, of approximately $596,413 annually.

(12) During four representative months of 1947 together with January, 1948, plaintiff sustained a net loss, in connection with the operation of trains 51 and 52 including both direct (out-of-pocket) and indirect expenses, properly attributable to the operation of said trains, at the rate of $296,282 annually.

(13) As shown by its annual reports to the Interstate Commerce Commission and the Illinois Commerce Commission for the year 1947, plaintiff sustained an annual loss from its system-wide passenger train operations of $10,293,251, and an annual loss from its Illinois passenger train operations of $3,059,866.

(14) On March 18, 1948, the Office of Defense Transportation issued General Order 69 directing that plaintiff reduce its coal-burning locomotive mileage by 25% on account of the nationwide coal strike. In compliance therewith, plaintiff discontinued, among others, the operation of its trains 51 and 52 on March 21, 1948, and transferred to plaintiff's trains 47 and 48 the passenger, mail, express and other services previously performed by its discontinued trains 51 and 52.

(15) On April 8, 1948, while said Order 69 was in full force and effect, plaintiff filed an application with the Illinois Commerce Commission in Docket 36185 wherein plaintiff sought temporary authority to discontinue trains 51 and 52 as well as permanent authority to abandon the operation of said trains.

(16) Said Commission set plaintiff's application to discontinue and abandon said trains for hearing at Springfield, Illinois, on April 20, 1948, and, when plaintiff appeared and attempted to offer proof in support of its application in Docket 36185, said Commission, acting through Defendants John D. Biggs, William Parillo, Frank Peska, Edwin A. Rosenstone, and Val J. Washington, summarily dismissed said application in response to an oral motion by a representative of the Order of Railway Conductors, and without affording to plaintiff a hearing of any kind or character, on the ground that said O. D. T. Order 69 had expired on April 13, 1948, and plaintiff was allegedly not entitled to a hearing on said application until after it had first restored its discontinued trains 51 and 52.

(17) On May 15, 1948, plaintiff filed a motion for rehearing in said Commission's Docket 36185 and therein alleged that the summary dismissal order entered by said Commission on April 20, 1948, violated plaintiff's rights under the 14th Amendment of the United States Constitution. On May 25, 1948, said Commission denied plaintiff's motion for rehearing in Docket 36185.

(18) On April 20, 1948, said Commission entered a Citation Order, docketed said order as 36251, and therein required that plaintiff appear before said Commission at Springfield, Illinois, on May 18, 1948, to show cause why plaintiff's trains 51 and 52 had not been restored to service between East St. Louis, Illinois, and Savanna, Illinois.

(19) On May 18, 1948, plaintiff appeared before said Commission pursuant to said Citation Order in Docket 36251 and offered to prove its losses in connection with the operation of trains 47 and 48, and 51 and 52, together with its 1947 Illinois and

system-wide passenger train losses, all as hereinabove set forth in findings 11, 12 and 13. Plaintiff also then and there offered to prove said Commission's illegal custom and practice of conducting sham hearings in its train-discontinuance cases for a period of more than 7 years last past by the device of granting innumerable continuances for frivolous reasons with the result that train-discontinuance cases that ought to be heard in 3 days and decided within 30 days thereafter required an average of 18 months to hear and decide—thereby dissipating plaintiff's assets. But said Commission refused to permit plaintiff to prove either its passenger train losses or the aforesaid custom and practice. Said Commission also refused to permit plaintiff to prove that it had filed an application with said Commission in Docket 36185 wherein plaintiff sought authority to discontinue and abandon trains 51 and 52 at a time when said trains were lawfully discontinued pursuant to O. D. T. Order 69.

(20) On May 25, 1948, said Commission entered an order in Docket 36251 directing that plaintiff forthwith restore its trains 51 and 52 to railroad service between East St. Louis, Illinois, and Savanna, Illinois, said order to be effective June 15, 1948. On June 8, 1948, said Commission denied plaintiff's petition for rehearing with respect to the order entered by said Commission on May 25, 1948, in Docket 36251.

(21) On June 8, 1948, plaintiff filed motions in Docket 36251 wherein plaintiff requested postponement of the effective date of said Commission's final order in said docket pending judicial review (a) of said Commission's dismissal order in Docket 36185, and (b) of said Commission's order in Docket 36251 requiring that plaintiff reinstate trains 51 and 52 on or before June 15, 1948. Plaintiff's motions to postpone the effective date of said Commission's Order in Docket 36251 beyond June 15, 1948, were both denied on the day filed.

(22) Since discontinuing operation of its trains 51 and 52 between St. Louis, Missouri, and Savanna, Illinois, plaintiff has eliminated an average annual out-of-pocket loss directly attributable to the operation of said trains of approximately $110,387; and plaintiff has eliminated a total loss, including both direct and indirect expenses attributable to said trains, of approximately $296,282 annually. By transferring the passenger, mail, express and other services from said discontinued trains to plaintiff's remaining trains 47 and 48, plaintiff has reduced the annual average out-of-pocket loss in connection with the operation of trains 47 and 48 from $112,054 to $87,518; and plaintiff has reduced the total annual loss, based on direct (out-of-pocket) and indirect expenses of trains 47 and 48 from $309,952 to $296,617.

(23) By discontinuing trains 51 and 52 plaintiff has reduced its total annual passenger train losses between St. Louis, Missouri and Savanna, Illinois, including both direct (out-of-pocket) and indirect, from $606,234 to $296,617 or an annual reduction by elimination of said trains of $309,617 a year.

(24) All the Illinois communities formerly served by plaintiff's trains 51 and 52 are presently served by plaintiff's trains 47 and 48, and said communities are also located on, or immediately adjacent to, a system of improved highways.

(25) In 1916, the railroads of the United States furnished 98% of the total intercity passenger miles, whereas, in 1941, as a result of the network of improved highways and the transportation revolution wrought by the private automobile and the certificated bus, the railroads furnished only 9.3% of the total intercity passenger miles, and the motor vehicle furnished 89% of said passenger miles. The motor vehicle intercity passenger miles exceeded those by railroad for the first time in 1924 and the disparity in favor of the motor vehicle has continuously increased up to the present time.

(26) In 1900 there were more than 9,000 persons per motor vehicle in the United States and more than 8,000 persons per motor vehicle in Illinois. In 1910 there were more than 197 persons per motor vehicle in the United States and more than 159 persons per motor vehicle in Illinois. In 1920 there were more than 11 persons per motor vehicle in the United States and more than 11 persons per motor vehicle in Illinois. In 1947 there were only 3.8 persons per motor vehicle in the United States,

4.1 persons per motor vehicle in Illinois, and 3.9 persons per motor vehicle in Illinois counties presently traversed by trains 47 and 48 formerly traversed by trains 51 and 52.

(27) As a result of the construction of a vast network of improved highways throughout the United States, the State of Illinois and the counties through which trains 51 and 52 formerly operated, together with the transportation revolution wrought by the private automobile and the certificated bus and truck, Plaintiff's railroad has long since lost any monopoly it may formerly have enjoyed of the passenger transportation business along the route formerly traversed by trains 51 and 52.

(28) The passenger transportation revolution wrought by the private automobile and certificated bus, in connection with a vast system of improved highways, has not only resulted in transferring the radically larger proportion of the passenger transportation needs and services from the local railroad passenger train to the highway, but the convenience afforded by the private automobile in connection with said highways has so outmoded the local railroad passenger train (exclusive of railroad suburban service) as to cause said local train service to become an obsolete form of transportation.

(29) In 1923, the average number of revenue passengers per train-mile carried by trains 51 and 52 was 45, whereas the average number of such passengers per train-mile carried by said trains in 1947 was 13.5. The average number of Illinois intrastate revenue passengers per train-mile, carried by train No. 51 in the year ending January 31, 1948, was 2.9, and the average carried by train No. 52 in 1947 was 4.1.

(30) The average number of Illinois intrastate revenue passengers per train-mile carried by trains 47 and 48 during the months of April, May, June and July, 1948, was 3.5 and 2.8, respectively.

(31) The Railway Express Agency, Incorporated, is a Delaware corporation, domesticated in Illinois, which has an Illinois certificate of public convenience and necessity authorizing it to carry express shipments of general commodities over all highways in the State of Illinois and to and from each and every community formerly served by trains 51 and 52 as well as to and from all other communities in the State of Illinois. Public necessity does not require that plaintiff also provide express service, at a loss, to any of the communities formerly served by trains 51 and 52, especially since the radically larger portion of such services are now performed by motor vehicle.

(32) A majority of the communities formerly served by trains 51 and 52 are presently served by Illinois common carrier bus lines, and there are presently 36 such daily scheduled busses operating over various segments of the Illinois highways between East St. Louis, Illinois, and Savanna, Illinois.

(33) Plaintiff is not a common carrier of the United States mail. The collection and delivery of all such mail is the function of the United States government, exclusively.

(34) At no time during the last 25 years has plaintiff's net income from its system-wide railroad operations exceeded 4.39% of plaintiff's total investment in its railroad property. In nine of the last 25 years plaintiff's annual net income did not exceed sixty-six hundredths of one per cent of plaintiff's investment in its railroad property.

(35) Plaintiff's net income from the operation of its railroad in 1947 was $25,964,353, which sum amounted to a return of 3.86% on plaintiff's then total investment in its railroad plant. Plaintiff paid $10,250,322 in dividends to its stockholders in 1947, which sum involved a return to said stockholders of 1.52% on plaintiff's total investment in its railroad plant. In the 7 years, 1941 to 1947, inclusive, plaintiff's net income averaged less than 4% of its total investment in its railroad plant, and the average annual dividend payment to its stockholders during said years was less than 1.20% of plaintiff's investment in its railroad plant. During 7 years, 1941 to 1947, inclusive, plaintiff earned total net profits from its railroad operations of $159,336,221, and, of that amount, plaintiff retained $109,822,998 for use in connection

with the improvement of its railroad plant, in furtherance of the larger public interest and the congressional policy set forth in the Transportation Act, 49 U.S.C.A. § 301 et seq.

(36) During the 7 years immediately preceding the filing of the complaint herein on June 15, 1948, and continuously thereafter up to and including the trial on November 5, 1948, the Illinois Commerce Commission deliberately followed a custom and practice of conducting sham train-discontinuance hearings by the device of repeatedly granting continuances for frivolous reasons at the request of Railroad Brotherhood representatives or public office holders. As a result of said sham hearings, said Commission required an average of 18 months to dispose of each of 10 train-discontinuance cases filed by plaintiff when each and every one of said cases could have been heard in 3 days and decided in 30 days thereafter. In 7 of these cases, 46 continuances were granted, practically all of them for frivolous reasons; said cases involved passenger train operations where the average number of passengers per train-mile did not exceed and frequently was less than the number in the train crew. In 2 of said cases, said Commission, in addition to granting 10 continuances each, consumed approximately one year with the sham hearing and then took the cases under advisement for an additional year before entry of its final orders.

(37) At the time this case was submitted on November 5, 1948, said Commission was continuing with its practice of illegally dissipating plaintiff's assets through the device of sham hearings in said Commission's Docket 35925. Plaintiff's application to discontinue its trains 190 and 191 between Galesburg, Illinois and Rushville, Illinois in said Docket was filed January 20, 1948; evidence was taken in said case on February 17, 1948, March 18, 1948, April 22, 1948, May 18, 1948, and June 8, 1948—although all the evidence on which plaintiff relied in support of its application was presented on February 14, 1948. The average number of revenue passengers per train-mile on each of said trains averaged less than two persons, and the annual out-of-pocket loss from the operation of said trains was $16,957. Although plaintiff had shown its system-wide profits, said Commission continued said case from time to time on the pretext that it was also necessary, in order to reach a conclusion in said case, that plaintiff show the amount of profits derived by it from all the freight, passenger, mail, express, milk and cream, and newspaper business transported by all its trains over the identical segments of railroad traversed by plaintiff's trains 190 and 191 during each of the preceding 5½ years (including the war years). Although plaintiff made a showing that its books were kept in accordance with regulations prescribed by the Interstate Commerce Commission and that neither said Commission regulations nor plaintiff's books of account were kept in such a way as to enable plaintiff to obtain its freight and other earnings on this particular segment of line for a period of 5½ years, and that the obtaining of said information would involve the examining of hundreds of thousands of freight documents and would require the labor of 100 clerks for a period of a year at a cost to plaintiff of $358,429, said Commission, after previously holding 5 adjourned hearings, again continued said cause to December 9, 1948 for still another hearing on the pretext that plaintiff was obliged to assume the foregoing onerous financial burden in order to obtain this legally irrelevant evidence. At the time of the hearing herein on November 5, 1948, said Commission's sham hearing in its Docket 35925, subsequent to the initial hearing thereon on February 17, 1948, had already resulted in a dissipation of plaintiff's public utility assets approximately $10,000.

(38) At the time this case was submitted on November 5, 1948, said Commission was also dissipating plaintiff's assets through the device of sham hearings in said Commission's Docket 36698. Plaintiff's application to discontinue trains 7 and 10 between Galesburg and Quincy, Illinois, in said Docket involved out-of-pocket losses to plaintiff exceeding $25,000 annually. The communities involved would continue to be served daily by plaintiff's 4 remaining trains (2 in each direction each day). Said communities would also continue to be

served by a network of improved highways in a state where there was one motor vehicle for every 4 persons. After each party had submitted its case and rested on October 18, 1948, the case was continued, over plaintiff's objection, on the pretext that such continuance was necessary in order to permit one of the parties "to get the Federal Register and introduce that into evidence", in order to enable the City of Macomb also to enjoy a hearing, although 3 witnesses from Macomb had already testified, along with 8 other witnesses, in opposition to the application, at the Quincy hearing on October 18, 1948—and no showing was made with respect to who the witnesses would be at the proposed adjourned Macomb hearing nor what the character of their testimony would be. On these latter frivolous pretexts said hearing was continued from October 18 at Quincy to December 9, 1948, at Macomb, despite the fact that 11 witnesses (none of them passengers) had already testified in the Quincy hearing in opposition to plaintiff's application and despite the fact that each and every party had already submitted its case and rested on October 18, 1948, at the Quincy hearing.

(39) The United States Supreme Court and the Illinois Supreme Court have repeatedly challenged said Commission's attention to the fact that its deliberately protracted hearings involved an illegal confiscation of the public utility property involved, and warranted relief in a court of equity: Smith v. Illinois Bell Telephone Co., 1925, 270 U.S. 587 at page 589–592, 46 S.Ct. 408, 70 L.Ed. 747; Peoples' Gas Light & Coke Co. v. Slattery, 1940, 373 Ill. 31 at page 45, 46, 25 N.E.2d 482 at page 490; Pullman Co. v. Illinois Commerce Commission, 1947, 390 Ill. 40 at page 46, 60 N.E. 2d 232 at page 235.

(40) It would not be possible for plaintiff to reinstate and operate its passenger trains 51 and 52 between East St. Louis, Illinois, and Savanna, Illinois, so as to perform the same passenger train service formerly performed by those trains, as required by said Commission's order in Docket 36251, without also operating said trains over the 35-mile segment of railroad track in the State of Iowa between the Cities of Davenport and Clinton, and over which segment of railroad said trains have always operated in interstate commerce.

(41) At the hearing herein on plaintiff's motion for a temporary injunction on November 5, 1948, testimony of 5 witnesses and 22 exhibits were offered and received in evidence, and defendants' motion to dismiss was also submitted for decision. Thereafter, and before the motion for temporary injunction and the motion to dismiss were decided, the parties filed a stipulation on December 23, 1948, wherein it was agreed that the court might consider the testimony, exhibits and pleadings offered at the hearing on November 5, 1948, in deciding the merits of plaintiff's motion for a permanent injunction.

Conclusions of Law.

(1) Defendants John D. Biggs, William Parillo, Frank Peska, Edwin A. Rosenstone and Val J. Washington, as the duly elected, qualified and acting members of the Illinois Commerce Commission, are obligated to perform the duties of enforcing the Illinois Public Utilities Act, Ill.Rev. Stat.1947, c. 111⅔, § 1 et seq.

(2) Under the provisions of Section 49a of the Illinois Public Utilities Act, plaintiff is required to obtain permission from the Illinois Commerce Commission before discontinuing operation of any of its regularly scheduled passenger trains.

(3) Defendant George F. Barrett is the duly elected, qualified and acting Illinois Attorney General and is charged with the duty of commencing and conducting all suits and proceedings for the enforcement of the Illinois Public Utilities Act and all orders entered by the Illinois Commerce Commission pursuant thereto, including the remedies and penalties provided in Sections 75 to 79 of said Act.

(4) Plaintiff's suit arises under the Commerce Clause and the 14th Amendment of the United States Constitution, and the matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000.

(5) This court has jurisdiction of the parties and the subject matter and the questions for decision present no unresolved question of state law.

(6) If plaintiff restores its trains Nos. 51 and 52 to operation in compliance with the order of the Illinois Commerce Commission in Docket 36251, plaintiff will be subjected to irreparable loss, at the rate of approximately $130,000 annually, in a situation where there is no public necessity for said train service.

(7) If plaintiff fails to restore its trains 51 and 52 in compliance with the order of the Illinois Commerce Commission in Docket 36251, plaintiff will be subjected to irreparable loss, inasmuch as it will then be liable to the severe penalties provided for violation of the Illinois Public Utilities Act which involve fines ranging from a minimum of $1,000 a day to a maximum of $4,000 a day to be assessed against plaintiff for each day trains 51 and 52 are not operated. Plaintiff's officials will also be subject to fines ranging up to $1,000 and to imprisonment ranging up to one year for failure to reinstate said trains.

(8) Plaintiff has no adequate remedy at law.

(9) Plaintiff will suffer irreparable damage unless this court permanently enjoins defendants and their successors in office from pursuing any of the remedies provided by Sections 75 to 79 of the Illinois Public Utilities Act, or otherwise, with a view to compelling restoration of trains 51 and 52 in accordance with the requirements of Section 49a of the Illinois Public Utilities Act and said Commission's order in Docket 36251 made and entered pursuant to Section 49a.

(10) Plaintiff could not comply with said Commission's order in Docket 36251 and restore trains 51 and 52 between East St. Louis and Savanna, Illinois, so as to perform the same services formerly made available by those trains without, of necessity, traversing a 35-mile segment of railroad track lying wholly within the State of Iowa between the Cities of Davenport and Clinton, and thereby performing interstate passenger service.

(11) Public convenience and necessity with respect to which the Illinois Commerce Commission's jurisdiction lawfully extends does not include either the needs or the convenience of persons or services that involve transportation from St. Louis, Missouri, into the State of Illinois, or from Illinois into St. Louis, Missouri; nor does said Commission's jurisdiction include the needs or convenience of passengers or services moving from Illinois into Iowa, or from Iowa to Illinois. Accordingly, said Commission's jurisdiction does not extend to any interstate passenger, mail, express, milk, cream or newspaper services formerly performed by trains 51 or 52.

(12) Plaintiff's trains 51 and 52 were lawfully discontinued on March 21, 1948, pursuant to O. D. T. Order 69, entered in compliance with Section 2(a) (3) of the Second War Powers Act of 1942, 50 U.S. C.A.Appendix, § 633, and said trains were also lawfully discontinued at the time plaintiff filed its application with said Commission on April 8, 1948, in Docket 36185 to discontinue and abandon said trains, although said Order 69 had expired when plaintiff's application in said docket was set for hearing by said Commission on April 20, 1948.

(13) The summary dismissal of plaintiff's application in Docket 36185 on April 20, 1948, without first according plaintiff a hearing of any kind or character, in a case where restoration of said trains would inflict on plaintiff an annual out-of-pocket loss of approximately $130,000 and would inflict on plaintiff a total annual loss, including direct and indirect expenses, of approximately $300,000, was tantamount to a denial of the application to discontinue and abandon said trains and, as such, said dismissal order of April 20, 1948, was arbitrary and unreasonable, denied to plaintiff the equal protection of the law, imposed a burden on interstate commerce and violated plaintiff's rights under the Commerce Clause and the 14th Amendment of the United States Constitution. To compel the restoration of trains 51 and 52 pending a hearing on plaintiff's application in Docket 36185, pursuant to the requirements of Section 49a of the Illinois Public Utilities Act, would not only compel the doing of an idle act for the purpose of inflicting irreparable injury on a public utility but would also involve an injury to the larger public interest and a disregard of the railroad policy of economy laid down

by Congress in the Transportation Act, 49 U.S.C.A. § 301 et seq.

■ (14) Plaintiff has no further administrative remedy under the laws of the State of Illinois in view of the denial by the Illinois Commerce Commission on June 8, 1948, of plaintiff's motions to postpone the effective date of said Commission's order in Docket 36251. In view of the severe penalties provided by the Illinois Public Utilities Act for disobedience of such a Commission order made pursuant to said Act, said Commission's denial of plaintiff's motions to postpone the effective date of said order was, in and of itself, unreasonable and arbitrary and a denial to plaintiff of rights guaranteed by the 14th Amendment.

■ (15) There is no public necessity for the railroad passenger train services formerly provided by plaintiff's trains 51 and 52 between East St. Louis, Illinois, and Savanna, Illinois, because the communities involved have provided themselves (a) with a system of improved highways, (b) with one automobile for every 4 persons, and (c) with numerous certificated common carrier busses and trucks—with the result that the radically larger portion of their passenger transportation needs and services have been transferred from the local railroad passenger train to the motor vehicle on the highway, thereby rendering local railroad passenger trains, such as plaintiff's trains 47 and 48, 51 and 52, an obsolete form of transportation.

■ (16) Section 49a of the Illinois Public Utilities Act and said Commission's order of May 25, 1948, in Docket 36251 requiring reinstatement of plaintiff's trains 51 and 52 on or before June 15, 1948, between East St. Louis and Savanna, Illinois, as a condition precedent to a hearing on plaintiff's application to discontinue and abandon said trains in Docket 36185, have the effect of imposing an illegal burden on interstate commerce, of denying to plaintiff the equal protection of the law, and of arbitrarily depriving plaintiff of its property without due process of law in a case such as this (a) where the restoration of trains 51 and 52 is not a public necessity and their operation would inflict an annual out-of-pocket loss on plaintiff of approximately $130,000; (b) where plaintiff is presently furnishing daily passenger train service to each and every community formerly served by trains 51 and 52 at an annual loss to plaintiff of approximately $300,000; (c) where the communities formerly served by plaintiff's trains 51 and 52 have demonstrated that they prefer to satisfy their passenger transportation needs and services by using the private automobile and the certificated bus and truck in connection with an improved system of highways; and (d) where said communities have provided one automobile for every 4 persons and, by using the same in satisfying the radically greater proportion of their transportation needs and services, they have rendered the local railroad passenger train, including plaintiff's trains 47 and 48 and its former trains 51 and 52, an obsolete form of transportation.

■ (17) Plaintiff's system-wide railroad earnings are immaterial in a proceeding to discontinue and abandon local railroad passenger train service, such as that formerly provided by plaintiff's trains 51 and 52, where there is no public necessity, as distinguished from public convenience, for the continued operation of said trains and where the trains can only be operated at an out-of-pocket loss to plaintiff.

(18) Plaintiff cannot be compelled to operate local railroad passenger trains, such as Nos. 51 and 52, at an out-of-pocket loss, where there is no public necessity, as distinguished from public convenience, for the continued operation of said trains. Defendants' attempt to compel the restoration of trains 51 and 52 pursuant to Section 49a and/or said Commission's order in Docket 36251 by invoking the severe penalties by fine and imprisonment provided in the Illinois Public Utilities Act, is arbitrary and unreasonable, denies to plaintiff the equal protection of the law and, if successful, would impose an illegal burden on interstate commerce.

(19) In determining whether public convenience and/or necessity requires the restoration of plaintiff's local railroad passenger trains 51 and 52, the rules announced in older legal precedents established prior

to the transportation revolution wrought by the national system of improved highways and the widespread use of the private automobile, the certificated bus and truck, are no longer applicable, inasmuch as the widespread use of the motor vehicle on said highways not only destroyed the railroads' former monopoly of the passenger transportation business, but it has also made the local railroad passenger train an obsolete form of transportation.

(20) Plaintiff owes no common carrier obligation, either to the United States or the general public, to transport the United States mail. The collection and delivery of the United States mail is the obligation of the United States Government, exclusively. In an application to discontinue local railroad passenger trains such as plaintiff's trains 51 and 52, any alleged inconvenience with respect to the collection, transportation or delivery of the United States mail is irrelevant.

(21) If plaintiff were accorded a hearing on its application to discontinue its local railroad passenger trains 51 and 52 in said Commission's Docket 36185, plaintiff should, and probably would, be authorized to discontinue said trains between East St. Louis, Illinois, and Savanna, Illinois. A denial of plaintiff's application would be arbitrary and unreasonable, would deny the equal protection of the law and would impose an illegal burden on interstate commerce in view of the fact that said trains are not a public necessity and plaintiff is already sustaining an annual loss of approximately $300,000 from the operation of its trains 47 and 48 as a result of plaintiff's providing daily railroad passenger train service to the communities formerly served by trains 51 and 52. The reinstatement and operations of trains 51 and 52 would merely inflict an additional annual out-of-pocket loss on plaintiff of approximately $130,000 with no corresponding advantage to the communities involved and to the serious disadvantage of the larger public interest.

(22) The Illinois Commerce Commission's custom and practice of substituting a sham, for a fair, hearing by the device of granting repeated continuances for frivolous reasons with the result that an average of 18 months is required to hear and decide train-discontinuance cases that ought to be heard in 3 days and decided within 30 days thereafter involves an illegal and arbitrary dissipation of plaintiff's public utility assets in violation of plaintiff's rights under the 14th Amendment of the United States Constitution, in disregard of said Commission's obligation under the Illinois Public Utilities Act, in disregard of the policy of economical railroad operation enjoined by Congress in the Transportation Act and to the damage of the larger public interest.

(23) The Illinois Attorney General's attempt to invoke the severe penalties of the Illinois Public Utilities Act for the purpose of enforcing Section 49a of said Act and the Illinois Commerce Commission's order in Docket 36251 in order to compel plaintiff to reinstate and operate its trains 51 and 52 pending a deliberately delayed and protracted sham hearing, such as said Commission has accorded plaintiff for 7 years last past in train-discontinuance cases and such as said Commission is presently according plaintiff in Dockets 35925 and 36698, is arbitrary and unreasonable, and, unless enjoined by this court, would violate plaintiff's rights under the 14th Amendment of the United States Constitution.

(24) Plaintiff is entitled to a permanent injunction enjoining defendants John D. Biggs, William Parillo, Frank Peska, Edwin A. Rosenstone and Val J. Washington, as members of defendant Illinois Commerce Commission, and George F. Barrett, as the Illinois Attorney General, together with the successors in office of each of them, and their agents, servants, and attorneys from pursuing any of the remedies by mandamus, injunction, fine or imprisonment provided in the Illinois Public Utilities Act, or otherwise, for the purpose of compelling plaintiff to reinstate and operate its trains 51 and 52 between East St. Louis, Illinois, and Savanna, Illinois, pursuant to the provisions of Section 49a of the Illinois Public Utilities Act and said Commission's order in Docket 36251. The foregoing permanent injunction will continue in effect pending a hearing by said Commission on plaintiff's application to discontinue trains 51 and 52 in Docket 36185, as well as pending

judicial review of any unfavorable order that said Commission may ultimately enter with respect to plaintiff's application to discontinue said trains, and for a reasonable time thereafter.