Maria PEREZ et al., Plaintiffs,

v.

Abe LAVINE, as Commissioner of the New York State Department of Social Services, and Jule M. Sugarman, as Commissioner of the New York City Department of Social Services, Defendants.

No. 73 Civ. 4577.

United States District Court, S. D. New York.

July 22, 1974.

Community Action for Legal Services, Inc., New York City (Marttie L. Thompson, Michael A. O'Connor, New York City, of counsel); Bronx Legal Services Corporation "A", Bronx, New York, (James R. Potter, New York City, of counsel); Bronx Legal Services Corporation "B", Bronx, New York, (Rina Biaggi Morales, Bronx Legal Services, Corp. C., Bronx, N.Y., of counsel); Center on Social Welfare Policy and Law, New York City (Steven J. Cole, Adele M. Blong, New York City, of counsel) for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., State of New York (Burton Herman, Asst. Atty. Gen., of counsel) for defendant Lavine.

Adrian P. Burke, Corp. Counsel, New York City (Gayle S. Redford, Gregory D. Frost, New York City, of counsel), for defendant Sugarman.

Levy, Gutman, Goldberg & Kaplan, New York City (Jeremiah S. Gutman, New York City, of counsel) for New York Civil Liberties Union as amicus curiae.

Michael Ira Stolzar, New York City, for various welfare agencies as amici curiae.

BAUMAN, District Judge.

Before the court is the latest in a continuing succession of challenges to the manner in which New York administers its welfare programs. The named plaintiffs are either applicants for or recipients. of public assistance [1] whose cases are assigned to the eleven welfare centers in the Bronx. Their complaint broadly attacks existing conditions at these facilities; it alleges that each of these centers now handles a volume of cases far in excess of its capacity, and that the resultant overcrowding serves to deprive them of the benefits and services which they are due. Plaintiffs seek a declaratory judgment that the defendants, commissioners of the departments of social services for the City and State of New York, are obligated to provide sufficient trained personnel and adequate facilities to insure the prompt and adequate delivery of services. The complaint further prays for an injunction restraining the defendants from administering public assistance programs in the Bronx with inadequate staff and facilities.

The complaint sets forth with considerable particularity the alleged abuses existing at the welfare centers. It is contended that these centers have caseloads which range from sixty to two hundred fifty percent above their capacity. It is further alleged that on any given business day, between 300 and

---

1. Among the programs of which one or more of the plaintiffs are beneficiaries are: Aid to Families with Dependent Children (AFDC); Aid to the Aged, Blind and Disabled (AABD); Medicaid; Food Stamps; and Home Relief. All of these save the last are federal programs. As of January 1, 1974, AABD was supplanted by a program entitled Supplemental Security Income for the Aged, Blind and Disabled (SSI).

1,000 people line up outside the centers, and that the overcrowding is so severe that some arrive as early as midnight of the preceding day in order to insure a hearing for their request or complaint. Consequently, many hundreds of people, it is asserted, are turned away daily without gaining access to the centers. Those who get in are forced to wait between eight and sixteen hours. The tension and frustration borne of this congestion often leads to fights and other disruptions, which disturb residents of the neighborhood and further reduce the efficiency of the operation. Plaintiffs also complain of the inexperience and ineptitude of the staff; over fifty percent of the income maintenance workers, it is contended, have less than six month's experience, and new employees receive little meaningful training before entering upon their duties.

The allegations of the individual plaintiffs illustrate the alleged abuses even more graphically. Maria Perez, for example, states that she regularly arrives at one of the centers at 3:00 A.M., and often waits until 5:00 P.M. before receiving attention. Anselmo Alvarez is a recipient of Home Relief, a New York State program, but has had an application pending for assistance under the Federal Aid to the Disabled program since November, 1972. In June, 1973 he sought permission to move to a larger apartment he had succeeded in locating. He arrived at his welfare center at 7:00 A.M. on two successive days but was unable to gain access to a staff worker; he consequently lost the apartment. The plights described by the remaining named plaintiffs are similar. Some have physical infirmities that make them unable to endure the hours of waiting in line; others have had to make three or four day long visits to a center before receiving service.

The complaint sets forth five causes of action. It is alleged that the overcrowding and the consequent lengthy delays in the provision of services constitute a deprivation of property without due process of law in violation of the Fourteenth Amendment (Count 3). It is further alleged that the chaotic conditions existing in the Bronx welfare centers do not obtain elsewhere either in New York City or New York State, and that those welfare recipients compelled to resort to the Bronx centers for services are denied the equal protection of the law in violation of the Fourteenth Amendment (Count 4). Three statutory claims are also alleged. It is claimed that the failure of state and city officials to furnish assistance "with reasonable promptness to all eligible individuals" violates various provisions of the Social Security Act[2] and of the Food Stamp Act of 1964.[3] The failure to comply with the mandate of these federal statutes is alleged to violate the Supremacy Clause of the Constitution (Count 1). It is further claimed that the public assistance programs, as administered in these welfare centers, violate various regulations promulgated by the Department of Health, Education and Welfare[4] and are thus also violative of the Supremacy Clause (Count 2). Finally, it is alleged that defendant Lavine is not in compliance with obligations imposed by various provisions of the Social Security Act[5] in failing to respond to complaints concerning the aforemen-

2. 42 U.S.C. § 602(a)(10), which pertains to AFDC; 42 U.S.C. § 1382(a)(8), which pertains to AABD; and 42 U.S.C. § 1396a(a)(8), which pertains to medical assistance programs.

3. 7 U.S.C. § 2011 et seq.

4. See, e. g., 45 C.F.R. § 205.170(a), which requires that state agencies maintain facilities "that will adequately and effectively meet program and staff needs"; 45 C.F.R. § 206.10(a)(5), which requires that "services included in the plan shall be furnished promptly to eligible individuals without any delay attributable to the agency's administrative process; and 45 C.F.R. § 233.-10(a)(1)(ii), which prohibits "the inequitable treatment of individuals or groups in the light of the provisions and purposes of the public assistance titles of the Social Security Act."

5. 42 U.S.C. §§ 602(a)(1) and 1396a(a)(1).

tioned conditions at the Bronx centers (Count 5).

Both defendants have now moved to dismiss the complaint for want of subject matter jurisdiction and failure to state a claim on which relief can be granted, pursuant to Rules 12(b)(1) and (6) of the Federal Rules. Plaintiffs, in turn, have moved pursuant to Rule 23(c)(1) for an order declaring the instant case a class action.[6]

## I.

■■ The combination of statutory and constitutional claims set forth in the complaint raises familiar jurisdictional problems. Plaintiffs claim that jurisdiction can be premised either on 28 U.S.C. § 1331 or 28 U.S.C. §§ 1343(3) and (4). In order for jurisdiction to exist under § 1343(3), the complaint must present a substantial constitutional question. Almenares v. Wyman, 453 F.2d 1075 (2nd Cir. 1971), cert. denied, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972); Aguayo v. Richardson, 473 F.2d 1090 (2nd Cir. 1973), cert. denied, 414 U.S. 1146, 94 S.Ct. 900, 32 L.Ed.2d 101 (1974). If a substantial constitutional question is presented, the court may also consider the pendent statutory claims. Almenares v. Wyman, supra; United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Alternatively, plaintiffs also argue that jurisdiction exists pursuant to § 1331; they seek to obviate the $10,000 amount in controversy requirement by invoking Bass v. Rockefeller, 331 F. Supp. 945 (S.D.N.Y.1971), dismissed as moot, 464 F.2d 1300 (2nd Cir.1971), which permitted a class of welfare recipients to aggregate their claims when they asserted a common and undivided interest in a single fund. The propriety

of § 1331 jurisdiction in such circumstances has never been addressed by our Court of Appeals. See Almenares v. Wyman, supra, at fn. 11, and Aguayo v. Richardson, supra, at fn. 15. See also, Note, Federal Jurisdiction over Challenges to State Welfare Programs, 72 Columbia L.Rev. 1404 (1972). Because I have concluded that at least one of plaintiffs' constitutional arguments is substantial, I also find it unnecessary to consider the applicability of § 1331.

■ The level of "substantiality" necessary to premise jurisdiction on § 1343(3) has been the subject of consideration in two recent Supreme Court decisions, Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973) and Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). The Court reiterated, as it has frequently in the past, that a claim is constitutionally insubstantial only if it can be deemed "essentially fictitious", "obviously frivolous', or "obviously without merit." See Bailey v. Patterson, 369 U.S. 31, 82 S. Ct. 549, 7 L.Ed.2d 332 (1962); Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 30 S.Ct. 326, 54 L.Ed. 482 (1910); Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062 (1933); Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed.2d 152 (1933); McGilvra v. Ross, 215 U.S. 70, 30 S.Ct. 27, 54 L.Ed. 95 (1909).[7] The Court noted in Goosby that "[i]n the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims ′ are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial . . . " 409 U.S. at

---

6. Two motions have also been filed, one by the New York Civil Liberties Union, the other by the Community Council of Greater New York and various other civic organizations, for leave to appear as *amici curiae* in support of the plaintiffs' position. The motions are denied without prejudice to renewal before the trial judge.

7. The cases cited above, with the exception of *Hagans*, all dealt with the degree of "constitutional substantiality" necessary for the convening of a three-judge court pursuant to 28 U.S.C. § 2281. *Hagans*, however, makes clear that there is no difference between the standard of substantiality applicable in such situations and that which is to be applied in determining jurisdiction under § 1343(3).

518, 93 S.Ct. at 859. The Court in *Hagans,* in finding the particular claim there presented to be substantial, based its determination at least in part on the fact that "[w]e are unaware of any cases in this Court specifically dealing with this or any similar regulation and settling the matter one way or the other." From this explication I am given to understand that the Court would deem only two types of constitutional claims insubstantial: (a) those conclusively foreclosed by prior decisions or (b) those patently frivolous or incapable of reasoned elaboration. It seems that any constitutional claim for which cogent and well supported arguments can be adduced must be deemed substantial, regardless of the court's ultimate views on the merits of the argument. Given this concededly minimal standard, I now turn to plaintiffs' arguments.

Because the only question now before me is the jurisdiction *vel non* of this court, I find it necessary to consider only one of plaintiffs' arguments, that based on due process. I intimate no views about the adequacy of their equal protection claim. As I have already noted, the plaintiffs contend, in essence, that the congestion, confusion, and long delays in the delivery of services that characterize the operation of these centers deprive them of their welfare benefits without due process of law. They argue, as I understand it, that the delays to which they invariably find themselves subjected in obtaining relief are often tantamount to denials of such relief. They further contend that the difficulties which they and other members of the proposed class of Bronx welfare recipients encounter in obtaining needed services serves to discourage them from seeking our such services at all.

The nebulous contours of the due process clause provide no ready answers to the claims asserted. However, at this stage of the litigation and on this record it is not necessary that I finally adjudicate the merits of these arguments: I

need only determine whether they are substantial. As both sides agree, this is not a due process argument of the Goldberg v. Kelly [8] variety, in which those deprived of benefits decry the absence of notice and a hearing. Rather, the question presented here is whether mere delay in the delivery of benefits caused by administrative inadequacies amounts to a deprivation of property without due process of law.

Plaintiffs have adduced some persuasive authority in support of an affirmative answer to this question. In Nelson v. Sugarman, 361 F.Supp. 1132 (S.D.N.Y.1972), it was contended, inter alia, that the city and state departments of social services were failing to implement in timely fashion fair hearing decisions which granted increased benefits to the plaintiff welfare recipients. It was alleged that these delays in the provision of benefits violated both HEW regulations and the due process clause. The court held that this claim was sufficiently substantial to support jurisdiction under § 1343(3) and noted that "[t]he failure to provide assistance to such applicants, who have been found to have insufficient means of support, is certainly as serious as the 'total or substantial withdrawal of benefits from families living near the edge of subsistence.'" The court concluded that the claim of delays in providing benefits pursuant to fair hearing decisions was sufficient to "present a colorable issue of denial of due process safeguards."

Another applicable precedent, albeit further removed in time and subject matter, is Smith v. Illinois Bell Telephone Co., 270 U.S. 587, 46 S.Ct. 408, 70 L.Ed. 747 (1926). The Illinois Commerce Commission had failed for over three years to act on the telephone company's proposed schedule of increased rates which, if adopted, would have helped to eliminate the company's steadily increasing deficits. The company therefore instituted an action against the commerce commission to enjoin en-

8.   397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

forcement of the rate schedule then in effect, which is deemed "confiscatory". The Supreme Court affirmed the injunction issued by the district court, finding the commission's neglect a deprivation of property without due process of law. The Court stated: "Property may be as effectively taken by long-continued and unreasonable delay in putting an end to confiscatory rates as by as express affirmance of them; . . . the injured . . . company is not required indefinitely to await a decision of the rate-making tribunal before applying to a federal court for equitable relief." 270 U.S. at 591–592, 46 S.Ct. at 410. See also Chicago, B. & Q. R. Co. v. Illinois Commerce Commission, 82 F.Supp. 368 (N.D.Ill.1949). Plaintiffs argue, not without reason, that if the due process clause protects telephone companies against unreasonable delays in the provision of needed relief, it must afford similar protection to welfare recipients.

█ In light of the above authorities, I am compelled to conclude that the claimed denial of due process does raise a substantial constitutional question. It would appear that these contentions have never been foreclosed by decisions of any federal court; if they have been, the defendants have certainly failed to bring them (or any other relevant decisions, for that matter) to my attention. Defendants rely simply on the ritual invocation of Goldberg v. Kelly, supra, a case which sheds little light on the problems presented here.[9] Nor are these arguments patently frivolous: there is respectable authority for the proposition that excessive administrative delay in the furnishing of services can rise to a denial of due process. I of course do not rule at this juncture as to whether the congestion at the welfare centers is

excessive or the delays incurred by the plaintiffs unreasonable. The evidence ultimately adduced at trial may indicate that the delays are less severe than claimed, or that the defendants have good and sufficient reason for them. The Supreme Court noted in Cafeteria & Restaurant Workers v. McElroy, 367 U. S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." Due process is "neither a technical nor an inflexible concept", see United States ex rel Walker v. Mancusi, 467 F.2d 51 (2nd Cir. 1972), and a conclusive determination as to whether the challenged practices conform to the mandate of the Fourteenth Amendment must await an evidentiary hearing. For the moment, however, defendants' motion to dismiss for want of subject matter jurisdiction and failure to state a cause of action is denied.

## II.

█ I now turn briefly to plaintiffs' motion that this be designated a class action pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules. The proposed class would consist of applicants for or recipients of public assistance pursuant to AFDC, AABD, Home Relief, the Food Stamp program, or the medical assistance provided in Title XIX of the Social Security Act, who reside within the geographical boundaries of the Bronx or whose cases are assigned to welfare centers located in the Bronx.

The criteria of Rules 23(a)[10] and 23(b)(2)[11] appear to be easily met.

9. Cf. Aguayo v. Richardson, 473 F.2d at 1112, fn. 34, in which the Court of Appeals noted a similar deficiency in defendant's briefing.

10. Rule 23(a):
"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2)

there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

11. Rule 23(b)(2):
"(b) Class Actions Maintainable. An action may be maintained as a class action if the

The numerosity requirement of Rule 23(a)(1) is satisfied by the assertion in paragraph 13 of the amended complaint, uncontradicted by the defendants, that the class consists of approximately 135,000 cases, totalling perhaps 350,000 recipients of or applicants for public assistance.

With regard to the requirement of Rule 23(a)(2), it seems clear that at the very least the constitutional claims asserted in Counts 3 and 4 are common to the class: all recipients of welfare, regardless of the public assistance category to which they belong, suffer similarly from the congestion and delays in delivery of services which are alleged to be violative of the due process and equal protection clauses. The statutory claims, however, can be asserted only by the recipients of that category of public assistance to which the statute applies. That is, only recipients of AFDC can assert violations of 42 U.S.C. § 602(a)(10), only recipients of medical assistance can assert violations of § 1396(a)(8), and so on. No interest other than that of legal symmetry would be served, however, by designating subclasses pursuant to Rule 23(c)(4)(B) at this stage of the litigation. The trial of the instant action will necessarily touch upon both statutory and constitutional claims simultaneously, and there is no material difference in the burden of proof which those in the various categories of assistance must shoulder. Plaintiffs do not now seek an order dividing the class into subclasses, and I see no need to recognize any such distinctions prior to the point at which the court considers the final form of declaratory and injunctive relief. See Green v. Wolf Corporation, 406 F.2d 291 (2nd Cir. 1968); Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968); Siegel v. Realty Equities Corporation of New York, 54 F.R.D. 420 (S.D.N.Y.1972).

I am also satisfied that the claims of the named plaintiffs are typical of those asserted by the class. The affidavits submitted by all of the named plaintiffs, some of whose allegations have already been alluded to, amply demonstrate that the difficulties they have encountered in obtaining needed services stem from the congestion and inefficiency of the welfare centers whose operations are challenged on behalf of the entire class. With regard to the requirement of Rule 23(a)(4), it is beyond question that the plaintiffs will adequately protect the interests of the class. Many of the attorneys who represent them have participated in the various significant welfare class actions of the past few years that have originated in this court. Furthermore, the degree of competence thus far displayed in the conduct of this litigation gives assurance that the class will be more than adequately represented.

Finally, it is tolerably clear that the instant action is precisely of the type contemplated by Rule 23(b)(2). The Advisory Committee Notes to Rule 23 which refer to this subsection, set out in the margin,[12] point up its applicability. Furthermore, examples of cases challenging state welfare practices in which class action status has been granted are too numerous to catalogue. See, e. g., Almenares v. Wyman, 334 F.Supp. 512

---

prerequisites of subdivision (a) are satisfied, and in addition:
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; . . . . ."

12. "This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature . . . settling the legality of the behavior with respect to the class as a whole, is appropriate . . . Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class. Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration." (Citations omitted).

(S.D.N.Y.1971), aff'd., 453 F.2d 1075 (2nd Cir. 1971); Gaddis v. Wyman, 304 F.Supp. 717 (S.D.N.Y.1969); James v. Goldberg, 302 F.Supp. 478 (S.D.N.Y. 1969); Doe v. Shapiro, 302 F.Supp. 761 (D.Conn.1969); Hurley v. Van Lare, 365 F.Supp. 186 (S.D.N.Y.1973). The motion for an order designating the instant case a class action is therefore granted.

In sum, defendants' motion to dismiss for want of jurisdiction and failure to state a cause of action is denied; plaintiffs' motion for class action designation is granted.

It is so ordered.