STATE CORPORATION COMMISSION OF KANSAS ET AL. *v.* WICHITA GAS CO. ET AL.

No. 114. Argued November 16, 1933.—Decided January 8, 1934.

*Messrs. E. H. Hatcher* and *Charles D. Welch,* with whom *Mr. Roland Boynton,* Attorney General of Kansas, and *Messrs. Louis R. Gates* and *Charles W. Steiger* were on the brief, for appellants.

*Mr. Robert D. Garver,* with whom *Mr. Robert Stone* was on the brief, for appellees other than Cities Service Gas Co.

*Mr. James W. Finley,* with whom *Mr. R. E. Cullison* was on the brief, for Cities Service Gas Co., appellee.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Ten suits were consolidated for trial.[1] The appellee in each of the first nine is a local public service corporation,

---

[1] The appellees are: The Wichita Gas Co., The Hutchinson Gas Co., The Newton Gas Co., The Pittsburg Gas Co., The Capital Gas &

for convenience called a distributing company, engaged in the business of furnishing natural gas to consumers, domestic and industrial, in Kansas, and together they operate in 128 cities and towns. The other appellee, Cities Service Gas Company, is a pipe line company, engaged in transporting gas from Texas and Oklahoma fields into Kansas and other States. The stock of each of the distributing companies is owned by the Gas Service Company, and its stock is owned by the Cities Service Company; the common stock of the Cities Service Gas Company is owned by the Empire Gas and Fuel Company, the voting stock of which is owned by the Cities Service Company. Henry L. Doherty, doing business as Henry L. Doherty & Company, owns 35 per cent. of the voting stock of the Cities Service Company. The policies of the distributing companies and the pipe line company are subject to control by the Cities Service Company and Doherty controls its policies. These corporations and he constitute " affiliated interests " as defined by a Kansas statute effective March 9, 1931,[2] the substance of which is later to be stated.

The Kansas statutes empower its public service commission to regulate the service and to fix rates to be charged by public utilities, including the distributing companies.[3] They prescribe heavy penalties for failure to comply with commission-made orders.[4] But the sale, transportation and delivery of natural gas by the pipe line company to the distributing companies constitutes interstate commerce and therefore the State is without power to prescribe rates or prices to be charged therefor. *Mis-*

Electric Co., The Wyandotte County Gas Co., The Girard Gas Co., Union Public Service Co., The Western Distributing Co., Cities Service Gas Co.

[2] Kansas Laws, 1931, c. 239; Kan. R.S., §§ 74–602a, b, c.

[3] Kan. R.S., §§ 66–107, 66–110, 66–111, 66–113.

[4] Kan. R.S., § 66–138.

*souri* v. *Kansas Gas Co.,* 265 U.S. 298, 305, *et seq.* *Peoples Gas Co.* v. *Pub. Serv. Comm'n,* 270 U.S. 550, 554. *Pub. Util. Comm'n* v. *Attleboro Co.,* 273 U.S. 83, 90. *Smith* v. *Illinois Bell Tel. Co.,* 282 U.S. 133, 148.

The Act of March 9, 1931, § 1, gives the commission jurisdiction over holders of the voting stock of public utility companies to the extent necessary to require disclosure of the identity of the owners of substantial interests therein, and provides that the commission shall have access to the accounts and records of affiliated interests, relating to transactions between them and public utility companies. Section 2 declares that no management or similar contract with any affiliated interest shall be effective unless first filed with the commission, and authorizes the commission to disapprove any such contract found not to be in the public interest. Section 3 provides: " In ascertaining the reasonableness of a rate or charge to be made by a public utility, no charge for services rendered by a holding or affiliated company, or charge for material or commodity furnished or purchased from a holding or affiliated company, shall be given consideration in determining a reasonable rate or charge unless there be a showing made by the utility affected by the rate or charge as to the actual cost to the holding or affiliated company furnishing such service and material or commodity. Such showing shall consist of an itemized statement furnished by the utility setting out in detail the various items, cost for services rendered and material or commodity furnished by the holding or affiliated company."

July 2, 1931, the commission, exerting powers granted by the Act, ordered an investigation of the charges made by holding companies for services rendered and commodities furnished to the distributing companies. It directed them to give the commission such information as they

might see fit and as the commission might require; it ordered them to show cause why charges made by any holding company, if found unreasonable, should not be disallowed as operating expenses. The order was not directed to Henry L. Doherty & Company, the pipe line company or any holding company, and none of them appeared or became a party to the proceeding before the commission.

And, pursuant to the order, there were held extended hearings at which there was submitted much evidence as to the value of the pipe line company's properties located in five States, its operating expenses, including depreciation and taxes, and its gross revenues and income available for return. In short, the facts adduced were such as appropriately might be considered by a commission for the ascertainment of reasonable rates to be charged by the pipe line company, or by a court in determining whether established rates are confiscatory. Each distributing company tendered proof of the value of its own property used to furnish gas to its customers together with other facts essential to the determination of the reasonableness of the rates then being, and later to be, charged its customers. But the commission, not then being engaged in the investigation of the reasonableness of such rates, refused to hear evidence other than that bearing upon the reasonableness, as operating expense items, of charges made by affiliated interests for services rendered the distributing companies and especially of prices exacted by the pipe line company for gas delivered in interstate commerce at the gates or borders of the various cities and communities served by the distributing companies.

The commission held payment of 1¾ per cent. of their gross earnings to Henry L. Doherty & Company unwarranted and the prices paid the pipe line company for gas

unreasonable to the extent that they exceeded 29.5 cents per thousand cubic feet.[5]   P.U.R. 1933A, pp. 113–202.   It granted the companies' application for rehearing, and August 31, 1932, put aside the order filed with its report and in its place promulgated two orders:

The first directed the distributing companies to cease setting up as an expense item payment of the 1¾ per cent. charge and payment to the pipe line company for gas in excess of 30 cents per thousand cubic feet and to give no consideration to the payments so disapproved in fixing rates to domestic consumers.   And it directed that, on October 17, 1932, the distributing companies show cause why the prescribed reduction should not be passed on to the consumers.[6]

The second order directed that, effective September 1, 1932 and pending hearing and an order prescribing rates, "All distributing companies paying a gate rate in excess

---

[5] Throughout the record the city gate rate is referred to as the "40-cent rate." That is the usual charge per thousand cubic feet of gas delivered by the pipe line company to the mains of the distributing companies. But as in some instances the city gate rate was lower, the average was 39.5 cents.

[6] The text is as follows:

"1. That on and after the 1st day of September, 1932, the distributing companies, respondents above named, shall cease to set up on their books as an expense item any payments made to Henry L. Doherty & Company under the contract above mentioned, because of the one and three-fourths per cent charge and also any payments made to Cities Service Gas Company for main line town border gas in excess of 30 cents per M.C.F., and should give no consideration to any such payments in fixing a rate for the domestic consumer.

"2. That on the 17th day of October, 1932, the distributing companies, respondents above named, appear before the Public Service Commission, at 10: 00 o'clock A.M., and show cause to the Commission why the reduction in expenses as above set forth should not be passed on to the consumers with such other reductions as may be found reasonable."

of 30 cents per M.C.F. shall deduct the difference between what the distributing company is now paying at the city gate and 30 cents per M.C.F. and pass on this difference to the consumer."

Apprehending that, as counsel for the commission asserted at the hearing, these orders would become final and absolutely binding unless within 30 days, §§ 66–113, 66–118, action were commenced to have them set aside, appellees brought these suits September 19, 1932. Each sued the commission, its members and the attorney general, invoking jurisdiction on the ground that its suit is one arising under the Federal Constitution. The complaint, upon the basis of fact set forth, asserts that the orders are repugnant to the commerce clause and the contract clause of the Constitution and to the due process and equal protection clauses of the Fourteenth Amendment and prays temporary and permanent injunction. The defendants moved to dismiss on the grounds that the bill fails to state a cause of action and that the court was without jurisdiction. A specially constituted court of three judges denied the motion to dismiss. The defendants answered, admitting that because repugnant to a state statutory provision the second order was unauthorized and is void. The court granted temporary injunction and tried the case upon the merits. It was submitted upon the evidence introduced before the commission, stipulations as to matters of fact and other evidence. The court made findings of fact and stated its conclusions of law. Equity Rule 70½. And it permanently enjoined the defendants from enforcing the orders in so far as they required the distributing companies to cease to set up on their books any payment to the pipe line company for gas in excess of 30 cents per thousand cubic feet, to give no consideration to such payments in fixing a rate for the domestic consumer and, commencing September 1, 1932,

to charge rates reduced as directed by the second order.[7]

The first order does not purport to establish or prescribe prices to be paid by the distributing companies to the pipe line company or purport to establish any rate to be charged by appellees to their customers. It merely directs the distributing companies not to include in their operating expense accounts more than 30 cents per thousand cubic feet for gas furnished by the pipe line company and not to consider any payments in excess of that price in fixing a rate for domestic consumers.

We need not decide whether these provisions are repugnant to the Constitution or whether they are otherwise invalid. The invalidity of such an order is not of itself ground for injunction. Unless necessary to protect rights against injuries otherwise irremediable, injunction should not be granted. *Terrace* v. *Thompson,* 263 U.S. 197, 214.

---

[7] Paragraph (3) of the decree:

" That the defendants, the Public Service Commission of the State of Kansas, and the members thereof, and Roland Boynton, Attorney General of the State of Kansas, and each of them, their agents, servants, and employees, and all other persons acting under or through their authority, be and they are hereby permanently enjoined and restrained in the enforcement and execution of the provisions of two certain orders of said Public Service Commission dated August 31, 1932, insofar as the said orders require that the distributing companies, plaintiffs in the above named cases, should cease to set up on their books any payments made to Cities Service Gas Company for main line town border gas in excess of 30 cents per M.C.F., and should give no consideration to any such payments in fixing a rate for the domestic consumer; and, insofar as they and/or either of them require that effective September 1, 1932, and until a hearing is held and an order issued, the said distributing companies should charge rates to the consumers as follows:

"All distributing companies paying a gate rate in excess of 30 cents per M.C.F. should deduct the difference between what the distributing companies were then paying at the city gate and 30 cents per M.C.F., and should pass this difference on to the consumer."

Appellees in substance suggest that, unless now adjudged invalid and enjoined, the findings and directions of the commission in respect of their operating expenses and the fixing of rates will be binding upon them in later proceedings for the prescribing of rates to be charged by them for gas furnished to consumers and in suits involving the validity of such rates. But the commission's proceedings are to be regarded as having been taken to secure information later to be used for the ascertainment of reasonableness of rates. The order is therefore legislative in character. The commission's decisions upon the matters covered by it cannot be *res adjudicata* when challenged in a confiscation case or other suit involving their validity or the validity of any rate depending upon them. *Prentis* v. *Atlantic Coast Line,* 211 U.S. 210, 227. *Chicago, M. & St. P. Ry. Co.* v. *Minnesota,* 134 U.S. 418, 452, *et seq.* But the decisions of state courts reviewing commission orders making rates are *res adjudicata* and can be so pleaded in suits subsequently brought in federal courts to enjoin their enforcement. *Detroit & Mackinac Ry.* v. *Mich. R.R. Comm'n,* 235 U.S. 402, 405. *Napa Valley Co.* v. *R.R. Comm'n,* 251 U.S. 366, 373. The appellees were not obliged preliminarily to institute any action or proceeding in the Kansas court in order to obtain in a federal court relief from an order of the commission on the ground that it is repugnant to the Federal Constitution. *Bacon* v. *Rutland R. Co.,* 232 U.S. 134, 138. *Missouri* v. *Chicago, B. & Q. R. Co.,* 241 U.S. 533, 542. *Ex parte Young,* 209 U.S. 123, 166. And upon the issue of confiscation *vel non* they are entitled to the independent judgment of the courts as to both law and facts. *Ohio Valley Co.* v. *Ben Avon Borough,* 253 U.S. 287, 289. *Bluefield Co.* v. *Pub. Serv. Comm'n,* 262 U.S. 679, 689. *United Railways* v. *West,* 280 U.S. 234, 251.

It results, therefore, that appellees in their complaints failed to state facts sufficient to entitle them to a decree

enjoining the appellants from enforcing the first order for, as insisted by appellants in oral argument in this court, the challenged provisions are merely preliminary steps in aid of investigations for the ascertainment of the reasonableness of appellees' rates, and they have no binding force in respect of payments to the pipe line company or rates to be charged consumers and cannot be *res adjudicata*. The decree in so far as it enjoins enforcement of the provisions of that order will be vacated.

The commission, its members and attorney general having in their answer and here admitted that the commission's second order is invalid, the decree in so far as it enjoins the enforcement of its provisions will be affirmed.

*Decree modified and, as modified, affirmed.*