ANN ARBOR R. CO. v. MICHIGAN PUB-
LIC SERVICE COMMISSION et al.
Civ. A. No. 9198.

United States District Court
E. D. Michigan, S. D.

July 6, 1950.

Thornton, J., dissented.

Gustavus Ohlinger, and Ohlinger, Koles, Wolf & Flues, Toledo, Ohio, Louis E. Burke, and Talbot Smith, Ann Arbor, Mich., for plaintiff.

Stephen J. Roth, Attorney General, Archie C. Fraser, Assistant Attorney General, Albert J. Thorburn, Special Assistant Attorney General, for defendants.

Before SIMONS, Circuit Judge, and LEVIN and THORNTON, District Judges.

LEVIN, District Judge.

This three-judge court is convened under the authority of Title 28, U.S.C.A. § 2281, on plaintiff's application for an interlocutory injunction enjoining the Michigan Public Service Commission and others from enforcing its order that plaintiff operate one passenger train daily in each direction between Durand and Frankfort, Michigan.

Plaintiff alleges that enforcement of the order will result in an unconstitutional deprivation of its property and irreparable losses in substantial amounts.

The defendants have not answered the petition. They move its dismissal, contending:

(1) That a three-judge court may not be convened upon an application for an injunction to restrain an order of a state administrative agency unless the constitutionality of a statute of the state is questioned, and

(2) That the court is without jurisdiction to inquire into the validity of the alleged unlawful order of the Commission because remedies available to the plaintiff under state statutes have not been exhausted.

The United States Supreme Court in Oklahoma Natural Gas Co. v. Russell et al., Constituting the Corporation Commission of the State of Oklahoma et al., 261 U.S. 290, 43 S.Ct 353, 67 L.Ed. 659, put all doubts at rest that a three-judge court was the proper forum to hear an application, alleging, as does that of the plaintiff, that enforcement of an order of a state administrative agency would result in confiscation of property without just compensation, in violation of the guarantees of the Constitution of the United States. The following are three of the numerous cases in which three-judge district courts have been convened to hear and determine attacks upon the orders of state regulatory commissions. Atlantic Coast Line R. Co. v. Public Service Commission of South Carolina et al., D.C.S.C., 77 F.Supp. 675; Chicago, B. & Q. R. Co. v. Illinois Commerce Commission et al., D.C. Ill., 82 F. Supp. 368; Southern Ry. Co. v. Alabama Public Service Commission et al., D.C.Ala., 88 F.Supp. 441.

Since the year 1895, with the exception of the period from 1931 to 1943 when the properties of the plaintiff were in the possession of and operated by court appointed receivers, the plaintiff has operated a railroad and car ferries as a common carrier of freight and passengers in interstate commerce between the City of Toledo, Ohio, and cities in Wisconsin and Michigan.

The plaintiff has for many years provided passenger train service once daily, except Sunday, in each direction between its southern terminus, Toledo, Ohio, and Frankfort, Michigan, its northern terminus. This is the only rail passenger service furnished by the plaintiff. The Ohio trackage is 5.72 miles and the Michigan trackage is 292 miles. The revenues of the trains have been derived from passenger fares, compensation for the carriage of mail, express and miscellaneous items. The major out-of-pocket operating expenses of these trains consist of wages for train crews, cost of locomotive fuel, oil, supplies, and the cost of maintaining and servicing locomotives and cars. In addition to these expenses, there are other expenses incidental to the operation of a railroad, such as the cost of equipment and expenses allocable in part to these trains and in part to plaintiff's freight service.

In August 1941, when the road was in receivership, the receiver, alarmed by the size of the losses sustained in the operation of these two trains, petitioned the defendant Commission for authority to discontinue this service. Before a determination could be had, the United States entered the War and the proceedings on the petition were,

on February 28, 1944, continued until a date no later than six months after the official termination of the War.

Hostilities ceased on September 2, 1945. The operating passenger train loss, having regard to actual out-of-pocket expenses only, for the years 1941 to 1947, inclusive, amounted to $370,308.35. On May 28, 1948, the plaintiff petitioned the defendant for resumption of the proceedings, but the Commission, on July 7, 1948, denied the petition, and made an order that the plaintiff, either one year from said date, or six months after the official termination of the War, whichever date was earliest, could notice the matter for further hearing and consideration.

The operating passenger train loss for 1948 was $137,351.51. On July 11, 1949, the plaintiff petitioned for a further hearing, which was granted, and hearings were held on September 23 and 24 and December 1 and 2, 1949.

The operating passenger train loss for 1949 was in excess of $150,000. The passenger revenue for January, 1950, was less than half the revenue received in January 1949.

On February 21, 1950, defendant Commission made the order complained of, whereby it granted to the plaintiff permission to discontinue passenger service between the Michigan-Ohio state line and Durand, Michigan, a distance of approximately 90 miles, but directed continuance of the daily weekday service north of Durand to Frankfort, a distance of 198 miles but at hours which vary greatly from present schedules.

The defendants' contention that the plaintiff has not exhausted state remedies is premised upon the fact that the plaintiff has neither filed an application to the defendant Commission for a rehearing (Comp.Laws Mich. 1948, § 460.351, Mich. Stat.Ann. Sec. 22.111), nor appealed to the courts of the state as it had the right to do. (Comp.Laws Mich. 1948, § 462.26, Mich. Stat.Ann. 22.45). There is no absolute right to a rehearing under the Michigan statute. The defendant Commission is given a broad discretion to refuse or grant

a petition for rehearing. There is nothing in the statute requiring an application for rehearing before state judicial remedies may be pursued.

"As the law does not require an application for a rehearing to be made and its granting is entirely within the discretion of the Commission, we see no reason for requiring it to be made as a condition precedent to the bringing of a suit to enjoin the enforcement of the order." Prendergast et al., Constituting the Public Service Commission of the State of New York et al. v. New York Telephone Company, 262 U.S. 43, 48, 43 S.Ct. 466, 468, 67 L.Ed. 853.

The procedures provided by the Michigan statutes for the review of the Commission's orders are judicial and not administrative remedies. The courts of Michigan are prohibited by its Constitution from exercising other than judicial powers. "We must not usurp the functions of an administrative body. This the Constitution of the State forbids. Michigan Constitution [1908], Art. IV." Goodfellow v. Detroit Civil Service Commission, 312 Mich. 226, 232, 20 N.W.2d 170, 172.

The controversy having reached the judicial stage, the plaintiff is not obliged to take advantage of available state court remedies before pursuing available Federal remedies. Where relief is sought from an order of an administrative tribunal on the ground that it is repugnant to the United States Constitution, the plaintiff may immediately assert his rights in the Federal courts. Bacon et al., Public Service Commission of the State of Vermont v. Rutland Railroad Co., 232 U.S. 134, 34 S.Ct. 283, 58 L.Ed. 538; State Corporation Commission of Kansas et al. v. Wichita Gas Co. et al., 290 U.S. 561, 54 S.Ct. 321, 78 L.Ed. 500; Union Light, Heat & Power Co. v. Railroad Commission of Commonwealth of Kentucky et al., D.C., 17 F.2d 143. The issues present no unresolved questions of state law which require this court to withhold relief or insist that the plaintiff first avail itself of judicial remedies provided by state statutes in accordance with the doctrine expressed in American Federation of Labor et al. v. Watson, Attorney Gen-

eral et al., 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873, and the case of Shipman et al. v. DuPre et al., 339 U.S. 321, 70 S.Ct. 640.

The issue being one of confiscation, this court has not restricted itself to an examination of the transcript of the proceedings had before the Commission, but conducted a trial de novo, heard witnesses presented by both sides and considered other relevant evidence.

Plaintiff has no turntables, shops or terminal facilities of any kind at Durand, and without such equipment and facilities it is and will be impossible for it to operate trains between Durand and Frankfort, as ordered by defendant Commission. In order for plaintiff to procure the necessary equipment for the operation and to construct the buildings and facilities therefor, it will be necessary to make large capital expenditures and long delays will be encountered. If the plaintiff were to adopt the new schedules required by the defendant Commission, it would be necessary to incur additional operating costs for maintenance of the train, engine switching and payroll because the trains on the new schedules would be operating during the late afternoon and night hours.

The line from Durand to Frankfort makes scheduled and flag stops at thirty-two stations. These places have a total population of 58,493. The area served is essentially of an agricultural and resort character. The population in the three northern counties served has declined during the past twenty-five years. Eighteen communities have a population of under five hundred persons, and ten of these have a population of under one hundred. The area although so sparsely populated has excellent roads, and one out of four inhabitants therein is the registered owner of an automobile, and private bus lines serve some of the communities. The popularity of these motor vehicle facilities has destroyed the plaintiff's monopoly of the passenger business.

The passenger revenue for the entire rail line from Toledo to Frankfort declined from an amount of over $1,000,000 in 1915 to less than $45,000 annually during the past three years. The railroad is now carrying approximately eight thousand passengers a year between Durand and Frankfort and the intermediate points, at an average fare per passenger of $1.11. With this volume of business, the passenger train loss annually, having regard to out-of-pocket expenses only, will be over $125,000; but passenger volume is progressively diminishing. For example, during January of this year, which is not the lightest load month of the year, the plaintiff carried 1.58 passengers per train mile between Durand and Frankfort, and 2.29 passengers between Frankfort and Durand.

The position of the defendant Commission that the revenue from the passenger service would be increased by the adoption of the revised schedules, and by making the coaches more inviting, ignores the experiences of similar short-haul passenger trains throughout the country. The evidence in the case indicates that those on business or pleasure who have occasion to travel in the area served, are not likely to patronize this train even though the schedules ordered were adopted, and that even the attractive equipment of our most elaborate transcontinental trains, if placed on the tracks between Durand and Frankfort, would not compete successfully with motor vehicle transportation.

■ The defendant Commission has the responsibility of regulating the services and facilities of common carriers within the state for the security and accommodation of the public. It may not, however, make regulations for the furnishing of services or facilities which are obviously unnecessary and which can serve no useful purpose. The fact that the plaintiff has earnings from freight and ferry service which might absorb the losses is immaterial. Where there is no public necessity present, an order compelling the plaintiff to operate its trains under the circumstances of this case and under the conditions set out by the defendant Commission, is arbitrary and unreasonable, and carries with it the confiscation of the plaintiff's property without compensation, and denies to the plaintiff the equal protection of the laws, in violation of the Constitution of the United

States. Compare Atlantic Coast Line R. Co. v. Public Service Commission of South Carolina et al., supra; Chicago, B. & Q. R. Co. v. Illinois Commerce Commission et al., supra.

The application for an interlocutory injunction is granted.

The complaint will be dismissed as to the defendant Governor.

SIMONS, Circuit Judge, concurs.

THORNTON, District Judge (dissenting).

I cannot agree with the action of the court in granting an interlocutory injunction at this point in these proceedings.

Act 300 of the Public Acts of the state of Michigan, 1909, is described as follows: "An Act to define and regulate common carriers and the receiving, transportation and delivery of persons and property, prevent the imposition of unreasonable rates, prevent unjust discrimination, insure adequate service, create the Michigan Railroad Commission, define the powers and duties thereof, and to prescribe penalties for violations hereof."

By virtue of the foregoing legislation the state of Michigan has inaugurated a policy of insuring adequate service by common carriers to the people of the state of Michigan, and has vested in the Michigan Public Service Commission [1] the function of regulating the conduct and operations of common carriers within the state.

Sec. 2(f) of Act 300, P.A.1909, as amended, Comp.Laws Mich.1948, § 462.2(f) (22.21 (f), M.S.A.) provides in part as follows: "Provided, That any interested party shall be entitled to a re-hearing before the full commission on request served upon the commission within 5 days after service of such order upon such party. In the absence of a quorum of the commission at the time appointed for any hearing before such commission, such hearing may be continued to a later date by a single member of the commission present or, in the absence of any member, by the secretary."

Comp.Laws Mich.1948, § 460.351, Sec. 22.111, M.S.A., further provides: "The Michigan public utilities commission, in any proceeding which may now be pending before it or which shall hereafter be brought before it, shall have full power and authority to grant rehearings and to alter, amend or modify its findings and orders."

Comp.Laws Mich.1948, § 462.26, Sec. 22.45, M.S.A., provides in part as follows: "Any common carrier or other party in interest, being dissatisfied with any order of the commission fixing any rate or rates, fares, charges, classifications, joint rate or rates, or any order fixing any regulations, practices or services, may within 30 days from the issuance of such order and notice thereof commence an action in the circuit court in chancery for the county of Ingham, against the commission as defendant to vacate and set aside any such order on the ground that the rate or rates, fares, charges, classifications, joint rate or rates fixed are unlawful or unreasonable, or that any such regulation, practice or service fixed in such order is unreasonable * * *."

Comp.Laws Mich.1948, § 460.59, Sec. 22.9, M.S.A., provides as follows: "Any order or decree shall be subject to review in the manner now provided by law for reviewing orders and decrees of the Michigan railroad commission. In no case, however, shall any injunction or other order issue suspending or staying any decree or order of the commission except after due notice to the commission and a reasonable opportunity for hearing thereon."

The plaintiff, a Michigan railroad corporation, in August 1941, petitioned the

---

1. Sec. 3, Act 419, P.A.Mich.1919 (22.3, M.S.A.) abolished the Michigan Railroad Commission and created the Michigan Public Utilities Commission and established it in place and stead thereof. Sec. 1, Act 3, P.A.Mich.1939 (22.13(1), M.S.A.), created the Michigan Public Service Commission and Sec. 4 thereof (22.13(4) M.S.A.), abolished the Michigan Public Utilities Commission. In each instance all of the rights, duties, privileges, immunities and procedure invested by statute in the abolished commission were transferred to, and invested in, the successor commission.

defendant commission for authority to discontinue its passenger service operating within the state of Michigan and, after a series of adjournments, hearings were held and the matter was concluded by an order of the commission to the plaintiff. The nature of this order clearly indicates that careful consideration was given to the contentions of the plaintiff as well as to the welfare of the people of the state of Michigan. The plaintiff being dissatisfied with this order of the commission has not sought aid in a single remedy or in a tribunal made available to it by the laws of the state of Michigan, but rather has asked this court to retry the issues and enjoin the commission from carrying out its order.

The modern tendency is to compel a party aggrieved by the determination of a state administrative agency to pursue the remedies made available to him by state law, thereby effacing the distinction between administrative and judicial remedies insofar as resort to a Federal court is concerned. 42 Am.Jur., Pub.Admin.Law, Sec. 201.

If the order of the commission contains all the abuses claimed for it by the plaintiff in the instant proceeding, then the said order is unreasonable and plaintiff might have sought relief from it by petitioning the commission for a rehearing (Comp. Laws Mich.1948, § 462.2, Sec. 22.21(f), M.S.A.), by asking the supreme court of the state of Michigan to review the order (Comp.Laws Mich. 1948, § 460.59, Sec. 22.9, M.S.A.), or by making application to the circuit court for the county of Ingham under the provisions of Comp.Laws Mich. 1948, § 462.26, Sec. 22.45, M.S.A.

Since the legislature of the state of Michigan has established the policy of review of orders of the Michigan Public Service Commission by the circuit court for the county of Ingham and/or the supreme court of the state of Michigan, then the issue of whether an order of the commission is unreasonable should be determined in conformity with this policy before asking this court to pass upon any constitutional questions. That this court has jurisdiction to hear the matter on the constitutional issue is well established; however, in the exercise of a sound discretion, this court should require the plaintiff to exhaust its state remedies before seeking relief here.

In the dissenting opinion of Chief Justice Fuller in Prentis v. Atlantic Coast Line Co., 211 U.S. 210-237, 29 S.Ct. 67, 74, 53 L.Ed. 150, we find the following: "Power grows by what it feeds on, and to hold that state railroad companies can take their chances for the fixing of rates in accordance with their views in a tribunal provided for that purpose by state constitution and laws, and then, if dissatisfied with the result, decline to seek a review in the highest court of the state, though possessed of the absolute right to do so, and invoke the power of the Federal courts to put a stop to such proceedings, is, in my opinion, utterly inadmissible and of palpably dangerous tendency."

Justice Frankfurter, in speaking for the United States Supreme Court in Railroad Commission of Texas et al. v. Pullman Company et al., 312 U.S. 496-500-501, 61 S.Ct. 643, 645, 85 L.Ed. 971, had the following to say in relation to the discretion which federal courts should exercise in enjoining state policies: "Few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies, whether the policy relates to the enforcement of the criminal law, Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927; Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322; or the administration of a specialized scheme for liquidating embarrassed business enterprises, Commonwealth of Pennsylvania v. Williams, 294 U.S. 176, 55 S.Ct. 380, 79 L. Ed. 841, 96 A.L.R. 1166; or the final authority of a state court to interpret doubtful regulatory laws of the state, Gilchrist v. Interborough Rapid Transit Co., 279 U. S. 159, 49 S.Ct. 282, 73 L.Ed. 652; cf. Hawks v. Hamill, 288 U.S. 52, 61, 53 S.Ct. 240, 243, 77 L.Ed. 610. These cases reflect a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wise discretion', restrain their authority because of 'scrupulous regard for the rightful independence of the

state governments' and for the smooth working of the federal judiciary. See Cavanaugh v. Looney, 248 U.S. 453, 457, 39 S.Ct. 142, 143, 63 L.Ed. 354; DiGiovanni v. Camden Fire Ins. Ass'n, 296 U.S. 64, 73, 56 S.Ct. 1, 5, 80 L.Ed. 47. This use of equitable powers is a contribution of the courts in furthering the harmonious relation between state and federal authority without the need of rigorous congressional restriction of those powers. Compare 37 Stat. 1013, 28 U.S.C.A. § 380; Judicial Code, § 24(1), as amended, 28 U.S.C. § 41(1), 28 U.S.C.A. 41(1); 47 Stat. 70, 29 U.S.C. §§ 101–115, 29 U.S.C.A. §§ 101–115."

For these reasons this court should retain this proceeding to give the plaintiff an opportunity to pursue the remedies available to it under the laws of the state of Michigan.