**In re 100 LINDBERGH BOULEVARD CORP., Debtor.**

**100 LINDBERGH BOULEVARD CORP., Plaintiff,**

v.

**GURNETT ROCK, INC., Defendant.**

**Bankruptcy No. 190–13603–260.**
**Adv. No. 90–1371.**

United States Bankruptcy Court,
E.D. New York.

June 21, 1991.

Richard J. McCord, East Norwich, N.Y., for debtor/plaintiff.

Whitman & Ransom, New York City by Norma Levy, for defendant.

CONRAD B. DUBERSTEIN, Chief Judge.

The debtor 100 Lindbergh Boulevard Corp. (hereinafter the "Debtor" or "Lindbergh") commenced this adversary proceeding pursuant to sections 541 and 542 of the Bankruptcy Code to compel the Defendant in this action, Gurnett Rock, Inc., (hereinafter "Gurnett" or the "Defendant") to turn over property which the Debtor alleges belongs to it. In response, Gurnett moved pursuant to Bankruptcy Rules 7012(b)(1) and (6) to dismiss the Debtor's complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. For the reasons set forth below the Defendant's motion is granted and this action is dismissed.

## FACTS

On or about April 23, 1980, Gurnett obtained a ground lease for a certain piece of real property located in Nassau County, New York and constructed a building thereon (the "Property"). On June 22, 1989, Lindbergh made an all cash offer to purchase the lease and building for $6,850,-000. On August 15, 1989 the parties entered into a formal contract (the "Agreement" or "Contract") and a closing date was scheduled to occur on October 2, 1989. Lindbergh's obligation to close was not conditioned upon obtaining financing.

To secure its obligations under the Contract, Lindbergh provided a $500,000 deposit (the "First Downpayment") which was deposited with an escrow agent.

Due to its inability to obtain financing, Lindbergh failed to close on October 2, 1989. Gurnett agreed to extend the closing until November 3, 1989 notwithstanding the default. By letter dated November 13,

1989, the time to close was further extended. As per the terms of that letter the $500,000 First Downpayment was released from escrow together with interest thereon and paid over to Gurnett. An additional $300,000.00 (the "Second Downpayment") was delivered to the escrow agent pursuant to the terms of the letter as an addition to the Downpayment. (The First Downpayment and Second Downpayment are collectively referred to as the "Downpayments").

Subsequently Lindbergh requested and was granted many further extensions of the closing date. By letter dated March 29, 1990, it was granted yet another extension to July 2, 1990 so that it might obtain financing or assign the Agreement. Pursuant to that letter the Second Downpayment was released from escrow to Gurnett. That letter specifically states that "[i]n the event that we [Lindbergh] are unable to close title, we will waive any right we may have to specific performance of the Agreement of Exchange and any offset or defense we may have against your claim to retain the monies paid on account of the Agreement of Exchange as liquidated damages for our default."

No closing occurred on July 2, 1990. Instead the closing was postponed again at Lindbergh's request. The closing was last scheduled to occur on August 16, 1990.

On August 14, 1990, Lindbergh filed a complaint in New York Supreme Court, Nassau County (the "State Court") naming Gurnett as defendant. The Complaint in the State Court action alleged in part that Gurnett breached its implied covenant to act in good faith and deal fairly with Lindbergh by interfering with its ability to obtain approval by the appropriate officials in Nassau County for proposed renovations to the Property. It sought judgment for rescission of the Contract, the return of the Downpayments, and all other payments made or expenses incurred for extensions of the closing date plus consequential damages. Additionally, Lindbergh prayed for a permanent injunction enjoining Gurnett

from interfering with Lindbergh's application for site plan approval of the proposed renovations. Finally, it requested $2,500,000.00 in damages. Lindbergh also obtained an *ex parte* temporary restraining order, enjoining Gurnett from terminating the Agreement and extending Lindbergh's time to perform *sine die*.

On August 23, 1990, a short time after Lindbergh obtained the temporary restraining order, it filed its petition for relief under Chapter 11 of the Bankruptcy Code which is the case presently in this Court.

The next day the Debtor moved this Court by order to show cause for an order rejecting the Agreement, requesting the return of the $800,000 Downpayments. During the course of the hearing on the motion, this Court observed that this matter was a "pure *'Marathon Pipeline'* kind of situation, where this is a question of contract law as between the parties.... and I could not exercise jurisdiction to try this case."[1]

After the hearing held on August 28, 1990 and on the consent of both parties, this Court signed an order (the "Order") to the effect that (1) the Debtor's motion is granted solely to the extent that the Contract is rejected; (2) this Court does not have jurisdiction to decide the issues between the parties which are the basis of an action in the New York Supreme Court and declines to exercise such jurisdiction; (3) the Debtor consent to an order vacating the temporary restraining order imposed by the State Court by reason of the rejection of the Contract; (4) claims for damages as a result of breach of the Contract, and any relief sought pursuant to the terms of the Contract shall be contested in such non-bankruptcy court which has jurisdiction; and, (5) the time within which Gurnett may file a proof of claim for damages, if any, arising out of the rejection of the Contract, is extended to a date 60 days after the conclusion of such non-bankruptcy court litigation or such date as is fixed by order of this Court upon notice to Gurnett. That Order also made certain findings of fact, including the finding that Gurnett had con-

---

1. The celebrated case of *Marathon Construction Co. v. Northern Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), held that a bankruptcy court did not possess the constitutional authority to adjudicate a debtor's pre-petition contract claim.

sented to the Debtor's request to reject the Contract but had otherwise objected to the Court's jurisdiction to hear and determine any matters which are "non-core" matters and that Gurnett had not waived, and had expressly preserved, its claim that the Contract terminated before the filing of the Debtor's Chapter 11 petition on August 23, 1990.

By stipulation dated January 2, 1991, Lindbergh and Gurnett agreed to discontinue the State Court action. That stipulation merely states that the State Court action is discontinued with prejudice to renew and without costs to either party. There is no reference in the stipulation to a settlement or to any return of the Downpayment. The Debtor makes no claim whatsoever that Gurnett agreed to make any payment or return any funds to it as consideration for the discontinuance of the action.

The Court notes that Gurnett has not filed a proof of claim for damages resulting from the rejection of the Contract and Gurnett's time to file a claim has expired inasmuch as 60 days have passed since the conclusion of the State Court action.

Prior to the dismissal of the State Court action, on October 9, 1990, the Debtor commenced the within adversary proceeding pursuant to § 541[2] and § 542[3] of the Bankruptcy Code seeking the turnover of the $800,000 Downpayment. Gurnett has moved to dismiss the Debtor's complaint for failure to state a cause of action and for lack of subject matter jurisdiction.

## DISCUSSION

Section 542 of the Bankruptcy Code requires, with certain exceptions not applicable here, that anyone holding property of the estate deliver such property to the trustee, or as in this case the Debtor in Possession.[4] The Debtor maintains in its complaint that it is entitled to a turnover of the Downpayments, pursuant to § 542, because those funds constitute property of the estate. The Debtor also argues that the matter once pending in the State Court is irrelevant to the instant adversary proceeding. The Debtor maintains that in the instant proceeding all that is asked for is the turnover of the $800,000 Downpayments, whereas in the State Court action it sought rescission or $2.5 million in damages for breaching the implied covenant of good faith and fair dealing. Therefore the Debtor contends that the fact that its action was dismissed with prejudice to renew has no bearing on whether or not the Downpayments are the proper subject for this transaction.

The facts indicate that at the time of the filing of the petition for relief, Lindbergh had no interest in the Downpayments and hence those funds are not property of the estate. Moreover, it is clear the Debtor is precluded from asserting a claim to these funds inasmuch as its discontinuance of the State Court action in which it sought a return of the downpayments conclusively determined that the Debtor has no rights to these funds.

### 1. The Downpayments Are Not Property Of The Estate.

■ The Downpayments are not property of the estate because the Debtor

---

**2.** Section 541 of the Code states in pertinent part:

(a) The commencement of a case section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

**3.** Section 542 of the Code states in pertinent part:

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodi-

an, in possession, custody, or control, during the case, of property that the trustee may use, sell or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value if the value of such property, unless such property is of inconsequential value or benefit to the estate.

**4.** Section 1107 of the Code vests the Debtor-in-Possession with all the rights, other than the right to compensation, under Section 330 of this title, and all the powers of the trustee serving in a case under this Chapter.

agreed to release these funds from escrow months prior to the filing of the petition in bankruptcy. As noted above, the Debtor released the First Downpayment to Gurnett as per the terms of a letter agreement in which Gurnett agreed to extend the closing date even though the Agreement states that time is of the essence. The Second Downpayment was released from escrow five months prior to commencement of this case. Again, as per the terms of a letter agreement, the monies were released to Gurnett in recognition of Lindbergh's failure to timely close and with the understanding that the closing date would again be extended as an accommodation to Lindbergh. In that letter agreement, the Debtor specifically waived any rights it might have to the return of the Downpayments.

The Bankruptcy Code does not provide rules for deciding whether a debtor has an interest in property. "The nature and extent of the debtor's interest in property is determined by applicable non-bankruptcy law." *In re Prudential Lines Inc.*, 928 F.2d 565, 569 (2d Cir.1991). *See Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098 (2d Cir. 1990); *Pioneer Commercial Funding Corp. v. United Airlines Inc.*, 122 B.R. 871 (S.D.N.Y.1991). Therefore whether the Debtor had an interest in the Downpayments at the time the petitions for relief were filed must be determined by reference to New York State law. According to New York State law a deposit of property placed in escrow creates in the grantee an equitable interest in the property and upon full performance of the conditions according to the escrow agreement, or upon waiver of those conditions, title will vest in him. 20 N.Y.Jur. § 9, § 31 (2d ed. 1986). In this case, the parties agreed to release the Downpayment from escrow. Once that was accomplished legal and equitable title to the property vested in Gurnett and the Debtor relinquished all interest in that property.

The Debtor relies on *Matter of Berkley Multi–Units, Inc.*, 69 B.R. 638 (Bankr.M.D. Fla.1987) (Hereinafter "Berkley") to support its contention that the Downpayments are property of the estate. In that case, the trustee brought a turnover proceeding to recover funds deposited by the debtor in an escrow account as a downpayment for the purchase of real property prior to filing a petition for relief under Chapter 11. Money was released from the account to the seller of the real property post-petition even though no closing occurred. The court in that case adopted the position that "where the contingency of the escrow was not fulfilled prior to bankruptcy, the debtor holds an interest in the property." *Berkley*, at 641 (quoting *In re Missionary Baptist Foundation of America, Inc.*, 792 F.2d 502, 506 (5th Cir.1986)). Judge Paskay went on to observe that as of the date of the filing of the petition for relief, the seller was unable to close due to its inability to deliver good title, therefore there was a contingency of the escrow left unfulfilled as of the date of the bankruptcy. Hence the funds in escrow remained property of the estate as of the commencement of the case, and the turnover of the funds by the escrow agent post-petition to the seller was an unauthorized post-petition transfer violative of § 549 [5] of the Bankruptcy Code.

The instant case is distinguishable from *Berkley* in that the Downpayments were properly released from escrow over five months before the petition for relief was filed. Therefore as of the date of the filing of the petition for relief, the estate did not possess an interest in that property by virtue of the fact that the money was once held in an escrow account.

The Debtor also relies on the case of *In re Davies*, 27 B.R. 898 (Bankr.E.D.N.Y. 1983) to support its contention that it is entitled to turnover of the Downpayments. The Debtor mischaracterizes that case when it states that *Davies* stands for the proposition that funds in escrow pending the complete and full payment by the Debtor are property of the estate.

---

**5.** Section 549 of the Code provides that the trustee may avoid a transfer of property to the estate that occurs after the commencement of the case.

In *Davies*, during the pending of her Chapter 7 case the debtor rejected a contract for the purchase of household furniture. Before she went into bankruptcy, the debtor had made several installment payments which the seller was holding as a downpayment. After determining that the contract was an executory contract which the debtor was able to reject, the Court went on to discuss the proper measure of damages due to the seller. The Court then held the seller could not hold the downpayment as liquidated damages as that would operate as a penalty and that the correct measure of damages should be the difference between the market price of the furniture and the unpaid contract price at the time and place of tender together with any incidental damages. It was also held that the installment payments represented exempt property unreachable by creditors under Section 522 of the Code, hence allowing setoff by the creditor would be violative of the purpose of the Code.

The case at bar is distinguishable from *Davies*. First of all in *Davies*, the court ordered the downpayment returned to the debtor instead of allowing the creditor to keep the monies subject to setoff because the money represented exempt funds of the debtor. There is no such claim of exemption in this case.[6] Therefore there is no violation of the purposes of the code by allowing Gurnett to keep the funds subject to any setoff.

Secondly, the decision in *Davies* to compel the creditor to return the funds to the estate arose in conjunction with a hearing to determine the measure of damages the creditor was entitled to as a result of the debtor's rejection of the contract pursuant to section 365 of the Code. It was within this Court's jurisdiction to decide the appropriate measure of damages for the creditor and rule that the creditor was not entitled to the downpayments as liquidated damages.

Unlike *Davies*, this Court has not been asked to fix the measure of damages Gur-

nett might be entitled to as a result of the Debtor's rejection of the Contract. Instead, this Court has been requested to order turnover of the Downpayments to the Debtor regardless of any claim Gurnett might have to the funds as damages for the Debtor's breach of contract or as damages resulting from the rejection of this Contract. This request was made notwithstanding the entry of an order by this Court which explicitly states that any relief sought pursuant to the terms of the Contract shall be contested in such non-bankruptcy court that has jurisdiction and from which no appeal was ever taken. Furthermore, this request is made notwithstanding the fact that these issues formed the basis of an action brought in the State Court, which action was subsequently discontinued with prejudice.

2. *The Discontinuance of the State Court Action With Prejudice Bars the Debtor from Asserting A Claim To the Downpayments In This Chapter 11 Case.*

Inasmuch as the State Court action was dismissed with prejudice the Debtor is precluded from asserting a claim to the Downpayments in this Chapter 11 case. As has been stated, this Court previously entered an order mandating that claims for damages as a result of a breach of the Contract, and any relief sought pursuant to the terms of the Contract, shall be contested in such non-bankruptcy court which has jurisdiction. This Court recognized that in the interests of justice, comity and judicial economy, it would be best for this controversy which arises solely under state law, to be disposed of in State Court. As a result, the parties were free to continue the litigation of the suit already pending in State Court. The final outcome of that action was the stipulation by the parties to discontinue the action with prejudice. A discontinuance with prejudice has *res judicata* effect so that no later action may be brought on the claim. Siegal, *New York Practice* 353 (1978). Moreover, a state

---

6. Here the Debtor cannot make any claim for exemptions as it is a corporation, and as per section 522(b) of the Bankruptcy Code only in-

dividual debtors may exempt property from the estate.

court judgment commands the same *res judicata* effect in federal court that it would have in the court that entered it. *See State Corp. Com. v. Wichita Gas Co. #1,* 290 U.S. 561, 54 S.Ct. 321, 78 L.Ed. 500 (1934); *Lee v. City of Peoria,* 685 F.2d 196 (7th Cir.1982).

█ The outcome of the State Court action is dispositive of the proceeding because the underlying basis of that action was the determination of the rights of the Debtor to an award of damages and/or a return of the Downpayments and other monies for a breach of the Contract. As a matter of fact the complaint filed in State Court specifically prayed for a return of the Downpayments. Labeling the instant action as a turnover proceeding does not alter the fact that the Debtor's entitlement to all or any part of the Downpayments is merely a claim for damages for an alleged breach of contract by Gurnett. The Debtor may not assert a claim to the Downpayments in this case because the discontinuance of the State Court action acts as a Bar extinguishing the Debtor's claim and preventing the Debtor from litigating in this Chapter 11 case the issue of whether it is entitled to those funds.

After considering the Debtor's arguments, it is this Court's conclusion that the Debtor is not entitled to a turnover of the Downpayments as these funds do not constitute property of the estate. The voluntary release of the escrowed funds, the language in the letter agreement of March 19, 1990 in which the Debtor waived his rights to any offset or defense it might have against Gurnett's claim to retain the Downpayments as liquidated damages, and the fact that the Debtor's State Court action was discontinued with prejudice belies the Debtor's claim that it is entitled to a return of the Downpayments. Furthermore, the discontinuance of the State Court action with prejudice has *res judicata* effect preventing the Debtor from relitigating its claim to a return of the Downpayments.

### CONCLUSIONS

1. This Court has jurisdiction to determine the instant motion pursuant to 28 U.S.C. section 157(c)(2).

2. The subject funds previously escrowed amounting to $800,000 are not property of the estate and hence those funds are not the proper subject for a turnover proceeding pursuant to section 542 of the Bankruptcy Code.

3. The Debtor is barred from asserting a claim to the Downpayments as the discontinuance of the State Court action with prejudice has *res judicata* effect.

4. Gurnett's motion to dismiss for failure to state a claim upon which relief should be granted.

5. SETTLE ORDER CONSISTENT WITH THIS OPINION.