834 P.2d 873

In the Matter of the Investigation of Certain Property and Contributions of Hayden Pines Water Company.

HAYDEN PINES WATER COMPANY, Appellant,

v.

IDAHO PUBLIC UTILITIES COMMISSION, Respondent.

No. 19143.

Supreme Court of Idaho, Boise, February 1992 Term.

July 9, 1992.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for appellant. Morgan W. Richards, Jr. argued.

Larry EchoHawk, Atty. Gen., Lori K. Mann, Deputy Atty. Gen., Boise, for respondent. Lori K. Mann argued.

JOHNSON, Justice.

This is a public utilities case. The primary issue presented is whether the Public Utilities Commission's (PUC's) order requiring Hayden Pines Water Company (Hayden) to reduce its rates constituted a taking of Hayden's property without just compensation in violation of the United States Constitution and the Idaho Constitution. We conclude that the reduction was not unconstitutional.

A secondary issue is whether the PUC's direction that Hayden should retain an outside accountant without considering the expense of employing the accountant constituted a taking of Hayden's property without just compensation. We conclude that it did. We vacate the PUC's order reducing Hayden's rates and remand with directions to the PUC to consider Hayden's expense of hiring the accountant in setting Hayden's rates.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

The Hayden Pines Ratepayers Association (the Association) filed a complaint with the PUC in 1986, claiming that Hayden's rates were too high. During the course of the case concerning this complaint, the PUC audited Hayden's books and used this audit to determine Hayden's rate base, expenses, accounts, and other information relevant to Hayden's rate structure. At the conclusion of the case in 1988, the PUC ordered Hayden to reduce its rates.

At a hearing on petitions of Hayden and the Association for rehearing, the Association claimed that the PUC had erroneously included an old office building in Hayden's rate base and had failed to consider Hayden's receipt of contributions for construction that Hayden had not reported. The PUC refused to consider these issues and closed the case in February 1989.

In March 1989, on its own motion, the PUC initiated a new case, stating that "it is in the public interest to initiate this investigation into the status of [Hayden's] old office building and property as well as the unreported contributions allegation." Hayden moved to add several issues to this new case. The PUC refused to add all but two of these issues to the new case. The PUC concluded that Hayden's request to add issues was an attempt to have the PUC review the case that was closed in February 1989, which was then on appeal to this Court. Hayden and the PUC subsequently stipulated to the dismissal of the appeal in the earlier case.

Following a hearing, the PUC found that the old office building had not been erroneously included in Hayden's rate base, but that Hayden had received unreported contributions. The PUC found that Hayden's current rates were unreasonable and ordered Hayden to reduce its rates by 3.36%.

In the order, the PUC also stated:

Furthermore, to insure future accuracy, we find [Hayden] should retain the services of Mr. Presnell, or some other outside accountant, and have him reconcile [Hayden's] books every three months to make sure internal controls are in place and being obeyed and that the refunds required by this Order have been made.

Presnell testified that these accounting services would require an increased expense to Hayden of $15,000 annually. No one disputed the accuracy of this figure. The PUC refused to consider this additional expense in reducing Hayden's rates, stating:

[T]his "minimum amount" is an expense that has not yet occurred. Like every other utility under our jurisdiction, Hayden Pines Water Company incurs numerous expenses throughout the year. Some expenses increase, some decrease, while others are eliminated altogether. If the Company chooses to file for a rate increase, these accounting expenses will become part of the test year expenses. However, because they have not yet been incurred, we find it is inappropriate to increase rates by an amount that is not yet known, for services that have not yet been rendered.

Hayden appealed the PUC's order to this Court.

## II.

### THE PUC'S REDUCTION OF HAYDEN'S RATES WAS NOT AN UNCONSTITUTIONAL TAKING OF PRIVATE PROPERTY.

■ Hayden asserts that the PUC's reduction of Hayden's rates was an unconstitutional taking of private property. Specifically, Hayden contends that the PUC's refusal to consider Hayden's post–1986 expenses, rate base, and revenue when the PUC calculated Hayden's revenue requirement led to an artificial overstatement of Hayden's revenues. Hayden contends that this overstatement of Hayden's revenues led the PUC to require Hayden to reduce its rates. Hayden claims that this reduction was an unconstitutional taking of Hayden's private property without just compensation in violation of both the United States Constitution and the Idaho Constitution. We disagree.

The crux of Hayden's position is that to deprive public utility investors of a return on capital currently dedicated to public use constitutes an unconstitutional confiscation of property. Hayden argues that in addressing the issue of unconstitutional taking or confiscation this Court "must determine the utility's fair return to the best of its ability in the exercise of a fair, enlightened and independent judgment as to both law and facts." In support of its position, Hayden invokes both the fifth amendment to the United States Constitution, made applicable to the states by the fourteenth amendment, and art. 1, § 14 of the Idaho Constitution.

In support of its fifth amendment argument, Hayden cites four decisions of the United States Supreme Court from the 1930's: *United Ry. & Elec. Co. of Baltimore v. West,* 280 U.S. 234, 50 S.Ct. 123, 74 L.Ed. 390 (1930); *State Corp. Comm'n of Kansas v. Wichita Gas Co.,* 290 U.S. 561, 54 S.Ct. 321, 78 L.Ed. 500 (1934); *St. Joseph Stock Yards Co. v. United States,* 298 U.S. 38, 56 S.Ct. 720, 80 L.Ed. 1033 (1936); and *Baltimore & Ohio R.R. Co. v. United States,* 298 U.S. 349, 56 S.Ct. 797, 80 L.Ed. 1209 (1936). As the PUC points out, each of these four cases is based, in whole or in part, on a doctrine of independent judicial review of ratesetting first announced in *Ohio Valley Water Co. v. Ben Avon Borough,* 253 U.S. 287, 40 S.Ct. 527, 64 L.Ed. 908 (1920).

The PUC argues that later cases decided by the United States Supreme Court have, in effect, replaced the *Ben Avon* doctrine with the rule that when a utility alleges confiscation because of a ratesetting, the courts should examine only whether there is any reasonable basis upon which the ratesetting order can be upheld. In support of its position, the PUC cites three cases: *Federal Power Comm'n v. Hope Natural Gas Co.,* 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944); *In re Permian Basin Area Rate Cases,* 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968); and *Duquesne Light Co. v. Barasch,* 488 U.S. 299, 109 S.Ct. 609, 102 L.Ed.2d 646 (1989).

In *Duquesne,* the Supreme Court restated the constitutional parameters of ratesetting for public utilities under the taking clause of the fifth amendment:

> The guiding principle has been that the Constitution protects utilities from being limited to a charge for their property serving the public which is so "unjust" as to be confiscatory. If the rate does not afford sufficient compensation, the State has taken the use of utility property without paying just compensation and so violated the Fifth and Fourteenth Amendments.

488 U.S. at 307–08, 109 S.Ct. at 615–16, 102 L.Ed.2d at 657 (citations omitted).

Later in its opinion in *Duquesne,* the Court reviewed its decision in *Hope Natural Gas,* stating:

> We also acknowledged in that case that all of the subsidiary aspects of valuation for rate-making purposes could not properly be characterized as having a constitutional dimension, despite the fact that they might affect property rights to some degree. Today we reaffirm these teachings of *Hope Natural Gas:* "[I]t is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unreasonable, judicial inquiry ... is at an end. The fact that the method employed to reach that result may contain infirmities is not then important." [320 U.S.] at 602, 64 S.Ct. at 288. This language, of course, does not dispense with all the constitutional difficulties when a utility raises a claim that the rate which it is permitted to charge is so low as to be confiscatory: whether a particular rate is "unjust" or "unreasonable" will depend to some extent on what is a fair rate of return given the risks under a particular rate-setting system, and on the amount of capital upon which the investors are entitled to earn that return. At the margins, these questions have constitutional overtones.

488 U.S. at 310, 109 S.Ct. at 617, 102 L.Ed.2d at 658–59.

■ In support of its taking claim under the state constitution, Hayden invites us to

interpret art. 1, § 14 of our state constitution to require an independent review of the PUC's findings. This approach, which was used by the Supreme Court in *Ben Avon* in 1920, is more intrusive on the decisions of the PUC than the Supreme Court's decision in *Duquesne* requires. We reject Hayden's invitation.

*In re Mountain States Tel. and Tel. Co.*, 76 Idaho 474, 480, 284 P.2d 681, 683 (1955), the Court summarized the scope of the Court's authority to review decisions of the PUC:

> The function of rate making is legislative and not judicial. The commission as the agency of the legislative department of government exercises delegated legislative power to make rates. So long as it regularly pursues its authority and remains within constitutional limitations, the courts have no jurisdiction to interfere with its determinations.

The Court then reviewed some decisions of the United States Supreme Court, including *Hope Natural Gas*. In *Mountain States Telephone*, the Court quoted the same portion of the *Hope* decision that the Supreme Court quoted in *Duquesne*: "If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry under the Act is at an end." 76 Idaho at 480, 284 P.2d at 684.

Although art. 1, § 14 was not at issue in *Mountain States Telephone*, the reasoning of the Court there is consistent with the approach the United States Supreme Court took in *Duquesne*. Given the legislative function of the PUC, we will not read art. 1, § 14 as a mandate for us to determine more than whether the rates ordered by the PUC are just and reasonable.

In this case, Hayden argues that it was unjust or unreasonable for the PUC to reduce Hayden's rates without considering other issues that Hayden asked the PUC to consider. These issues concerned items Hayden contended were not properly considered by the PUC in the case that the PUC closed in February 1989, just a few weeks before the PUC opened this case. In effect, Hayden asks us to hold that the reduction of its rates by the PUC was an unconstitutional taking because the PUC did not allow Hayden to present these other issues for consideration by the PUC.

This approach by Hayden mixes a challenge to the procedures used by the PUC with a challenge to the substance of the PUC's decision to reduce Hayden's rates. The fallacy in Hayden's argument is that this is an "investigative" case, not a rate case.

I.C. § 61–502 prescribes the procedure for determining rates:

> **61–502. Determination of rates.—** Whenever the commission, after a hearing had upon its own motion or upon complaint, shall find that the rates, fares, tolls, rentals, charges or classifications, or any of them, demanded, observed, charged or collected by any public utility for any service or product or commodity, or in connection therewith, including the rates or fares for excursions or commutation tickets, or that the rules, regulations, practices, or contracts or any of them, affecting such rates, fares, tolls, rentals, charges or classifications, or any of them, are unjust, unreasonable, discriminatory or preferential, or in any wise in violation of any provision of law, or that such rates, fares, tolls, rentals, charges or classifications are insufficient, the commission shall determine the just, reasonable or sufficient rates, fares, tolls, rentals, charges, classifications, rules, regulations, practices or contracts to be thereafter observed and in force and shall fix the same by order as hereinafter provided, and shall, under such rules and regulations as the commission may prescribe, fix the reasonable maximum rates to be charged for water by any public utility coming within the provisions of this act relating to the sale of water.

I.C. § 61–503 gives the PUC the power to investigate:

> **61–503. Power to investigate and fix rates and regulations.—**The commission shall have power, upon a hearing, had upon its own motion or upon complaint, to investigate a single rate, fare, toll, rental, charge, classification, rule, regu-

lation, contract or practice, or any number thereof, or the entire schedule or schedules of rates, fares, tolls, rentals, charges, classifications, rules, regulations, contracts or practices, or any thereof, of any public utility, and to establish new rates, fares, tolls, rentals, charges, classifications, rules, regulations, contracts or practices or schedule or schedules in lieu thereof.

■ In *Washington Water Power Co. v. Kootenai Envtl. Alliance*, 99 Idaho 875, 881, 591 P.2d 122, 128 (1979), the Court identified "practices," as that term is used in I.C. §§ 61–502 and 61–503, as "those practices which affect the rates, fares, tolls, rentals, charges or classification of the public utility." To say that the PUC must go through the same procedure in investigating a practice pursuant to I.C. § 61–503 that it must in determining rates pursuant to I.C. § 61–502 is to say that I.C. § 61–503 has no meaning. Clearly, the legislature intended that the PUC would have authority under I.C. § 61–503 to investigate and to make changes based on its investigation.

The order initiating this case directed the PUC to "initiate an investigation into the status of [Hayden's] old office building and property and the possible existence of unreported ... contributions." Following a hearing, the PUC found that Hayden had "failed to make accounting entries that would have worked to the benefit of ratepayers. It would be unfair to allow [Hayden] to maintain rates which would collect revenues in excess of those that would have been collected had the entries been properly made."

Because the investigation was focused on a particular practice of Hayden, it was not necessary for the PUC to treat the proceeding as a rate determination pursuant to I.C. § 61–502. Instead, the proceeding was an investigation pursuant to I.C. § 61–503. The fact that a reduction of rates resulted from the investigation is simply a product of correcting the practice of accounting for contributions.

In this context, the reduced rate was just and reasonable. It was directly related to the corrected practice of accounting for contributions.

## III.

**THE PUC SHOULD NOT HAVE DIRECTED HAYDEN TO EMPLOY AN OUTSIDE ACCOUNTANT AND THEN HAVE DISALLOWED THE EXPENSE OF DOING SO.**

■ Hayden asserts that it was an unconstitutional taking of Hayden's private property for the PUC to require Hayden to perform certain accounting functions without considering the cost of these accounting functions in reducing Hayden's rates. We agree.

It was unjust and unreasonable for the PUC to direct Hayden to employ an accountant and then to refuse to consider the expense of doing so in determining Hayden's rates. Presnell testified that the expense would be $15,000 a year. The PUC acknowledged that no one disputed the accuracy of this estimate. The PUC just refused to consider the $15,000 expense until Hayden filed a new rate case, using a test year in which it had actually paid the accounting expense.

In reality this will mean that Hayden will lose $15,000 a year until it applies for and obtains new rates from the PUC based on a test year in which the additional accounting expense required by the PUC is included in the test year data. *Utah Power & Light Co. v. Idaho Pub. Util. Com'n,* 102 Idaho 282, 629 P.2d 678 (1981). This will create a loss Hayden will never be able to recoup. This is unjust and unreasonable because it is the PUC that required the hiring of the accountant.

## IV.

## CONCLUSION.

We vacate the order of the PUC reducing Hayden's rates and remand to the PUC with direction to allow the accounting expense in determining Hayden's rates.

We award costs to Hayden.

BAKES, C.J., BISTLINE and McDEVITT, JJ., and REINHARDT, J., Pro Tem., concur.